## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

AHMED S. KHALIL,

                        Plaintiff,

       v.                                   5:22-CV-312
                                               (GTS/ATB)

GENERAL ELECTRIC CORP., et al.

                      Defendants.

AHMED S. KHALIL,  Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk sent to the court for review a civil rights complaint, together with a motion to proceed in forma pauperis ("IFP"), filed by plaintiff Ahmed S. Khalil.[1] (Dkt. Nos. 1, 2).  The court has reviewed the plaintiff's IFP application and finds that plaintiff has demonstrated sufficient economic need.  Therefore, plaintiff has met the financial criteria for proceeding IFP.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

---

[1] On April 20, 2022, this action was administratively closed due to plaintiff's failure to properly complete his IFP application. (Dkt. No. 5).  Plaintiff submitted the required documentation, and the case was reopened for review on May 5, 2022. (Dkt. Nos. 6, 7).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

2

## II.    **Complaint**

Plaintiff has filed this action on a form for civil rights complaints under 42 U.S.C. § 1983.  He also alleges that this action includes claims against a federal official under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and Breach of Contract claims pursuant to New York State Law.[2] (Compl. at CM/ECF p.10).[3]  The complaint includes 27 named defendants, together with at least 70 John or Jane Doe defendants. (Compl. at 2-10).  The complaint lists a summary of claims which plaintiff states apply to "all defendants." (Compl. at 11).  Because the complaint is so difficult to decipher, the court has attempted to determine what plaintiff's basic claims might be and then match plaintiff's lengthy recitation of fact to the alleged legal claims.[4]

Although plaintiff begins his recitation of the facts with a discussion of GE and his work at that company, in essence most of the remainder of plaintiff's complaint deals with conduct which appears to relate to criminal prosecutions against him for

---

[2] Plaintiff cites N.Y. Civ. Prac. L. & R. § 213(2) which provides a six-year statute of limitations for certain contract actions.

[3] Some parts of the complaint consist of a mixture of form pages and handwritten pages that are not consecutively numbered.  As to these pages, the court will refer to the pages as assigned by the court's electronic filing system (CM/ECF)  The "claims" appear to be contained in numbered paragraphs, and plaintiff has numbered his pages.  Thus, when possible, the court will refer to plaintiff's pagination.

[4] Pro se pleadings are liberally construed "'to raise the strongest arguments they suggest.'" *Kelly v. City of Mt. Vernon*, No. 21-1308, 2022 WL 710746, at *1 (2d Cir. Mar. 10, 2022) (quoting *McLeod v. Jewish Guild for the Blind*, 13 864 F.3d 154, 156 (2d Cir. 2017)).  Thus, this court has made a diligent effort to determine what claims plaintiff could possibly be trying to raise.

various charges as will be discussed below.[5]  Most of the named defendants appear to be individuals who were involved in the investigation or the prosecution of these charges, including the prosecutors themselves.

Plaintiff claims that "all" of the defendants engaged in malicious prosecution, conspiracy, fabricating evidence, failing to disclose exculpatory evidence, equal protection violations,[6] "involuntary" prosecution in violation of the First Amendment, due process violations, "stigma-plus" defamation,[7] municipal and corporate liability,

---

[5] Plaintiff is currently serving a four-year sentence after a July 14, 2020 conviction for First Degree Stalking and Fourth Degree Grand Larceny. http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ1/WINQ000.  In attempting to determine plaintiff's allegations, the court has also consulted a news article regarding the plaintiff's criminal prosecution, which lists many of the defendants. http://www.nny360.com/news/stlawrencecounty/former-potsdam-man-receives-prison-sentence-for-february-stalking-conviction/article_ab9d3864-4f87-505a-aae9-07245fc4ee1b.html. Plaintiff refers to the article in his complaint in attempting to establish some of his claims. (Compl. Claim # 2 ¶ 16). The court has consulted this article for the purpose of clarification, and because plaintiff apparently has incorporated it into his complaint, but my recommendation in this case is based solely upon the plaintiff's complaint. *See W.D. v. Rockland Cty.*, 521 F. Supp. 3d 358, 372 n.5 (S.D.N.Y. 2021) ("court may not consider newspaper articles as evidence of the truth of the facts asserted therein, as newspaper articles are hearsay and would not be admissible for their truth at trial").

[6] Plaintiff has failed to allege anywhere in the complaint how he was treated differently than any other criminal suspect, and makes no specific factual allegations regarding equal protection.  Thus, any such claim may be dismissed.

[7] Plaintiff has raised this "claim" in a conclusory fashion, but nowhere in the complaint is a specific allegation against a specific defendant (even a John or Jane Doe) that he was "defamed."  In any event, simple defamation is not actionable under section 1983. *Paul v. Davis*, 424 U.S. 693 (1976). In order to state a defamation claim in compliance with Fed. R. Civ. P. 8, "a plaintiff must 'identify (1) the allegedly defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and, (4) the third parties to whom the statements were published.'" *Murphy v. Onondaga County*, No. 5:18-CV-1218 (GLS/CFH), 2022 WL 819281 at *14 (N.D.N.Y. Mar. 18, 2022) (quoting *Hillary v. Vill. of Potsdam*, No. 7:12-CV-1669, 2015 WL 902930, at *11 (N.D.N.Y. Mar. 3, 2015) (citation omitted)).  "[T]he allegations must include 'the time, place, and manner of the false statement.'" *Id.* (quoting *Arvanitakis v. Lester*, 145 A.D.3d 650, 651 (2d Dep't 2016)).  Plaintiff has not fulfilled any of the above factors.

4

First Amendment religious freedom violations, and deprivations of medical care.[8] Plaintiff also alleges that he "asserts the following state law claims against all defendants": negligent hiring, training, supervision, and retention; false imprisonment; false arrest; breach of contract; and abuse of process. (Compl. at 11).

Plaintiff has divided the complaint into five "claims," thus, the court will assess each of the plaintiff's claims as he has listed them, discussing the relevant facts in each section.

## III.    Claim # 1 (General Electric) (Compl. Claim # 1 at 1-3)[9]:

### A.    Relevant Facts

In this claim, plaintiff begins by stating that he worked in various capacities for defendant General Electric ("GE") until 2017.  He states that in 2013, GE asked him to go to Pakistan, but plaintiff declined to do so on the advice of his attorney. (Compl. Claim #1 at 1 ¶ 1).  Plaintiff states that, while he was working for GE, "in or around" 2016 to 2017, he filed "integrity" complaints and "EEO" complaints. (*Id.* at 1-2 ¶ 2) Plaintiff states that, after applying for eleven different jobs within GE, he was finally promoted in December of 2016. (Compl. Claim #1 ¶ 2 at 2).  Plaintiff states that on March 31, 2017, he was told that he was being laid off. (*Id.* ¶ 3).  On an unspecified

---

[8] Plaintiff cites the Eighth Amendment with respect to his medical care.  Depending on whether plaintiff was a pretrial detainee or a convicted inmate, the standards are slightly different.  If plaintiff was already convicted at the time of his claims, his protection would be under the Eighth Amendment. However, as discussed below, if plaintiff was still a pretrial detainee at the time, any medical care claims would be brought under the Fourteenth Amendment Due Process clause. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

[9] Plaintiff begins numbering his pages again with page 1 at the bottom of the section entitled Claim # 1.

date, plaintiff alleges that an unknown Greene County Sheriff[10] came to plaintiff's house without calling and told plaintiff that he was sent by GE and that he was "reportedly suicidal." (*Id.*)

Plaintiff claims that in April of 2017, GE informed plaintiff that he was under investigation by two investigators who introduced themselves as former police officers and told plaintiff that GE was "too big," that GE worked with the Government, "intel and law enforcement," and that the New York State Police "has [sic] building inside the [GE] factory" in Schenectady. (*Id.* Claim #1 ¶ 4 at 2). Plaintiff states that, on April 30, 2017, GE breached its contract with plaintiff and attempted to have him sign a document waiving his "right to pursue covered claims against [GE]."[11] (*Id.* Claim #1 ¶ 5 at 2).

Plaintiff claims that on August 24, 2018, defendant St. Lawrence County ("SLC") Deputy Sheriff defendant John E. Jones came to plaintiff's residence and told plaintiff that he knew plaintiff worked for GE. (Compl. Claim #1 ¶ 6 at 2). Plaintiff claims that at 10:40 p.m. on August 24, 2018, a State Police officer, named "Eng"[12] told the SLC Sheriff that plaintiff was suicidal. (Compl. Claim #1 ¶ 7 at 3).

Plaintiff claims that on May 4, 2019, there were "text messages" between Ms. Farideh Hosseini-Norovei and defendant Department of Homeland Security ("DHS") in

---

[10] The court assumes that this unknown officer is not a defendant because he is not listed as a "John Doe."

[11] Plaintiff states that he did not sign the waiver. (Compl. Claim #1 ¶ 5 at 2).

[12] This individual has not been specifically named as a defendant.

which plaintiff was described as "professional." (Compl. Claim #1 ¶ 8(a) at 3).[13]  In July of 2019, Fran Krosania[14] of the Federal Bureau of Investigation ("FBI") discussed some of the details of plaintiff's contract with GE. (Compl. Claim #1 ¶ 8 at 3).  Plaintiff alleges that, on October 30, 2019, Ms. Hosseini-Norovei was "contacting a typed analysis to make [sic] connection between myself and the Central Intelligence Agency." (Compl. Claim #1 ¶ 8(a) at 3).

In the last paragraph of Claim #1, plaintiff states that he is a "citizen," he has lived in New York State since 2011, he has obtained various educational degrees, and was the recipient of three awards while he was working at GE. (Compl. Claim #1 ¶ 9 at 3).  Plaintiff also states that he traveled to at least thirty states while working for GE, and that the company charged $350.00 per hour for his time. (*Id.*)

## B.    Legal Standards

"Notwithstanding the liberal pleading standard afforded pro se litigants, federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking." *Chestnut v. Wells Fargo Bank*, N.A., No. 11-CV-5369 (JS/ARL), 2012 WL 1657362, at *3 (E.D.N.Y. May 7, 2012) (citing *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-701 (2d Cir. 2000)).  "'To state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law.'" *Patrick v. Success Acad. Charter Sch., Inc.*, 354 F. Supp. 3d 185, 206 (E.D.N.Y. 2018) (quoting *McGugan v. Aldana-Bernier*, 752 F.3d

---

[13] Claim #1 contains two paragraph 8s, and the court will refer to the second as 8(a).

[14] Agent Krosania is not listed as a defendant.

224, 229 (2d Cir. 2014)). "Section 1983's under-color-of-state-law requirement means that 'merely private conduct, no matter how discriminatory or wrongful,' is excluded from its reach." *Megginson v. Bridge, Inc.*, No. 21-CV-9626 (LTS), 2021 WL 6064409, at *2 (S.D.N.Y. Dec. 22, 2021) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *United States v. Int'l. Bd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'")).

The activity of a private entity may be attributed to the state in three situations: (1) where the entity acts using the coercive power of the state or is controlled by the state (the "compulsion test"); (2) where the entity willfully participates in joint activity with the state or its functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) where the state has delegated a public function to the entity (the "public function" test). *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012). The fact that an entity receives public funds, is subject to extensive regulation, or performs public contracts does not convert private action into state action. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840-41 (1982).

### C.    Analysis

GE is a private company[15] that does not act under color of state law, and plaintiff does not make any such allegation. Thus, this court has no jurisdiction over any claims

---

[15] Although GE is referred to as a "public company," this is not synonymous with a state actor. "Public companies" are referred to as such because they are publicly traded, not because they are governmental entities. https://www.nasdaq.com/glossary/p/public-company.

against defendant GE under section 1983.  Although plaintiff alleges generally, that he is bringing a breach of contract claim against GE, and he cites the New York State statute of limitations for contract actions,[16] it is completely unclear from his recitation of the facts how he believes that GE breached a contract with the plaintiff.  Plaintiff states random facts that allegedly occurred between 2013 and 2019, but never associates these facts with a violation of some provision in a contract.  He states that he was laid off in 2017, but never alleges that this action was in violation of a "contract."

Plaintiff claims that, shortly after he was laid off, a Greene County Deputy Sheriff came to his house, purportedly sent there by GE, and told plaintiff he was suicidal.  In 2018, more than a year after he was laid off, defendant Jones told plaintiff that he "knew" plaintiff worked for GE.  Plaintiff claims that in July of 2019, he and FBI Agent Fran Krosania (not a named defendant) discussed "some of [plaintiff's] contract details." (Compl. Claim #1 ¶ 8).  Plaintiff never mentions how his contract was breached by GE, particularly since plaintiff states he was laid off in 2017, and never explains how conduct occurring after that date, and into 2019, would have breached any agreement that he had with GE.

In any event, in order to have jurisdiction over plaintiff's state law contract claim the court would have to exercise "supplemental jurisdiction" under 28 U.S.C. § 1367. In order to consider exercising such jurisdiction, the court must first determine that the

---

[16] The court suspects that plaintiff has done this because he alleges that he was laid off from GE in 2017, and he may be concerned that the court would invoke the statute of limitations against him. The statute of limitations under New York law for contract actions is six years, while the statute of limitations for section 1983 actions is three years. N.Y. Civ. Prac. L. & R. § 213(2) (contracts); *Sant v. Stephens*, 821 F. App'x 42, 44-45 (2d Cir. 2020) (citations omitted).

state law claims over which the court seeks to exercise jurisdiction are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

As will be discussed below, the complaint is so disjointed that would be impossible to determine how plaintiff believes that this alleged "contract" violation is in any way related to the rest of his claims, and any supplemental jurisdiction would be declined.

## IV. Claim # 2 (Clarkson, Deputy SLC Sheriff John Jones) (Compl. Claim # 2 at 4-13):

### A. Relevant Facts

Plaintiff states that he obtained a Master's Degree in Mechanical Engineering from Clarkson University in December of 2017.[17] (Compl. Claim # 2 ¶ 1 at 4). Plaintiff alleges that in August of 2017, he was accepted into the Ph.D. program with a full scholarship and a teaching assistant position. (Compl. Claim # 2 ¶ 3 at 4). Plaintiff claims that in September of 2017, a professor began to harass and discriminate against plaintiff, but when he reported this conduct, plaintiff was told not to sue GE.[18] (Compl. Claim # 2 ¶ 4 at 4). The next few paragraphs describe projects that plaintiff was working on and mentions various individuals with whom he was "forced" to work or

---

[17] Plaintiff also mentions that, in 2016, GE's CEO gave a graduation speech at Clarkson, and that GE had an office on campus. (Compl. Claim # 2 ¶ 2).

[18] The complaint says that he was told not to sue "General Electric." (Compl. Claim # 2 ¶ 4 at 4). However, this may be a typographical error since plaintiff is talking about Clarkson, so maybe he intended to say that someone told him not to sue "Clarkson."

from whom he was told to take a class. (Compl. Claim # 2 ¶¶ 5-8 at 4-5).  Plaintiff also states that in April of 2018, he was "set up"[19] with Ms. Farideh Hosseini-Norovei by two other graduate students. (Compl. Claim # 2 ¶ 6 at 5).

Plaintiff states that in May of 2018, Ms. Hosseini-Norovei revealed damaging information about herself to the plaintiff which he reported to DHS and the FBI. (Compl. Claim # 2 ¶ 10 at 5).  Plaintiff claims that in August of 2018, the Clarkson University Director of Campus Safety and Security took a statement from plaintiff after Ms. Hosseini-Norovei made allegations against him. (Compl. Claim # 2 ¶ 11 at 5). Apparently, an order of protection was issued against the plaintiff and delivered by the SLC Sheriff to the University. (Compl. Claim # 2 ¶ 12 at 6).  Plaintiff claims that Clarkson University began a "malicious" investigation.[20] (Compl. Claim # 2  ¶ 13 at 6).

Clarkson imposed an interim suspension on plaintiff on August 25, 2018. (Compl. Claim # 2 ¶ 14 at 6).  In November of 2018, plaintiff claims an email was sent by Campus Security Director to the Village of Potsdam Chief of Police Mark Murray,[21] SLC Sheriff Kevin Wells, SLC Deputy Sheriff John Jones, and Senior Investigator James Goodman.[22] (Compl. Claim # 2 ¶ 14 at 6-7).  The email stated that, although

---

[19] Plaintiff is apparently referring to a social "set-up."

[20] However, plaintiff then cites the notice he received, which indicated that participation in the "process" would not be considered a violation of the "no contact directive," if the parties wish to submit written responses. (Compl. Claim # 2 ¶ 13).  Plaintiff interpreted that statement as Clarkson's recognition that participation in the process "will violate the law." (*Id.*)

[21] Chief Murray is not listed as a defendant.

[22] It is actually unclear who the senders and who the recipients of the email were, because the plaintiff's writing is difficult to understand, but the gist of the email is clear, and the fact that defendant Wells forwarded the email to the New York State Police is clear.

there was no reason to believe that plaintiff would react violently to the suspension, there was some concern for Ms. Hosseini-Norovei. (*Id.*)  The email stated that plaintiff had "illegal weapons." (*Id.*)  Defendant Sheriff Kevin Wells forwarded the email to the New York State Police, the New York State Police issued a "notice," and the Village of Potsdam sent an "SUV" to stay outside of plaintiff's residence. (*Id.*)

Plaintiff states that Clarkson acted "under color of state law" when on August 25, 2018, the SLC Sheriff pulled plaintiff over in a "townhouse parking lot," and New York State Police Officer Eng stopped "momentarily" to see if he could offer assistance.[23] (Compl. Claim # 2 ¶ 15 at 7).  The report states that plaintiff might have been suicidal and in possession of weapons, but none were found when the car was stopped. (*Id.*) Plaintiff was taken into custody, by the SLC Deputy Sheriff, and the order of protection was "left on Director Delisle's desk, after which, Director Delisle telephoned Judy Trimbold of the New York State Police to 'assist with information.'" (*Id.*)  Plaintiff then states that in April of 2019, there was a meeting between Ms. Hosseini-Norovei and Investigator Emily Davis and New York State Police Investigator Defendant Peter T. Kroenjel. (Compl. Claim # 2 ¶ 16 at 7).

Plaintiff then jumps back and forth between 2018 and 2019 and states that Ms. Hosseini-Norovei received an email from the International Students' Office in which her visa/immigration status was discussed, informing her that she could be deported (2018). (Compl. Claim # 2 ¶ 17 at 7-8).  Plaintiff then states that Ms.  Hosseini-Norovei spoke with defendant Davis about her immigration issues (2019). (Compl. Claim # 2 ¶

---

[23] Plaintiff appears to be quoting from a report written by the Clarkson Campus Safety and Security. (Compl. Claim # 2 at p.7).

18 at 8).  Then plaintiff states that in 2018, plaintiff discussed  how to solve her immigration problems with a friend by text.[24] (Compl. Claim # 2 ¶ 19 at 8).

Plaintiff also attempts to assert the bias and/or lack of credibility of defendants SLC Deputy Sheriff John Jones and Clarkson Safety and Security Officer Kevin Bates.[25] (Compl. Claim # 2 ¶ 21 at 8-9).  Plaintiff claims that defendant Bates was formerly a Village of Potsdam Police Officer, thus implying that he had some sort of bias toward the police.  Plaintiff alleges that defendant Jones has been sued in a previous civil rights action, perhaps in an effort to show he acted unlawfully in his case.[26] (*Id.*) (citing *Hillary v. Village of Potsdam*, No. 7:12-CV-1669 (GLS/DEP), 2015 WL  902930 (N.D.N.Y. Mar. 3, 2015); *Hillary v. St. Lawrence County*, No. 8:17-CV-659 (GLS/DEP), 2019 WL 977876 (N.D.N.Y. Feb. 28, 2019); *Hillary v. Village of Potsdam*, 8:17-CV-659 (GLS/DJS), 2021 WL 4355424 (N.D.N.Y. Sept. 24, 2021).  Plaintiff also refers to the news article cited above in which defendant SLC District Attorney Gary Pasqua thanked Clarkson "Safety and Security" and Assistant District Attorney ("ADA"), Marx[27] and ADA Nichols[28] for their help in prosecuting

---

[24] Plaintiff seems to imply that he is aware of "texts" between Ms. Hosseini-Norovei and other Clarkson graduate students which state that if Ms. Hosseini-Norovei makes unfounded claims against plaintiff, she will be "an American," and this will be enough to "get engaged with a new man." (Compl. Claim # 2 ¶ 19 at 8).

[25] Mr. Bates is not named as a defendant.

[26] These opinions are all separate decisions in one case involving an individual who sued many of the same defendants herein for civil rights violations related to a crime for which he was subsequently acquitted.

[27] ADA Jason Marks is not named as a defendant.

[28] Plaintiff points out that defendant Nichols's mother worked in the Clarkson admission office. (Compl. Claim # 2 ¶ 16).

plaintiff's criminal case. (Compl. Claim # 2 ¶ 16(a)[29] at 9).

Plaintiff then quotes some testimony which he has not identified, but which appears to be testimony from his criminal trial, although it is unclear what he hopes to establish by citing the testimony.[30] (Compl. Claim # 2 ¶ 17(a) at 10-11).  Plaintiff quotes trial testimony of Ms. Hosseini-Norovei. (*Id.* ¶ 22 12-13).  Finally, plaintiff alleges that defendant "Val" helped the district attorney with some "technological" computer support.[31] (*Id.* ¶ 22 at 13).

## B.    Analysis

As stated above, in order to be liable for a section 1983 violation, the defendant must act under color of state law.  Clarkson University is a private institution. https://www.clarkson.edu/about-clarkson.  To the extent that Clarkson cooperated with the law enforcement officials in the investigation surrounding plaintiff's criminal conduct, private actors providing information to law enforcement do not act under color of state law, even if that information is false. *Khan v. City of New York*, No. 14-CV-4665 (SLT/VMS), 2016 WL 1128298, at *2-3 (E.D.N.Y. Feb. 1, 2016) (citing cases).  Thus, the fact that an individual from the Safety and Security Department of Clarkson or any of the Clarkson employees provided information to the police, the University did not

---

[29] For some reason, plaintiff has included another ¶ 16 and another ¶ 17 before going back to ¶ 22.  The court will refer to the extra paragraphs as ¶ 16(a) and ¶ 17(a) with the corresponding page number of the complaint.

[30] The first quotation appears to be in the nature of cross-examination of a "SLC Deputy Sheriff," during which the questioner asks whether the witness smoked marijuana, got into a car accident, and was forced to resign from the Sheriff's Department. (Compl. Claim # 2 ¶ 17(a) at 10-11).

[31] This is the only time that defendant "Val" is mentioned in the complaint.

act under color of state law.  The fact that an ADA's mother worked at Clarkson is also not a basis for finding that the school acted under color of state law.  In one paragraph, plaintiff states that the University acted under color of state law, but then described being pulled over by an SLC Sheriff, who was briefly assisted by a New York State Police Officer. (Compl. Claim # 2 ¶ 15 at 7).  Plaintiff does not describe how this incident establishes state action by Clarkson.

Plaintiff also alleges that Clarkson violated a "contract" with plaintiff.  Plaintiff does not describe how Clarkson violated a contract that it had with plaintiff.  Plaintiff does claim that Clarkson placed him on interim suspension.  As stated above for GE, the only jurisdictional basis for a contract action would be for the court to assume supplemental jurisdiction.  A student may sue his or her college or university for breach of an implied contract in certain situations, but in order to state a valid claim, a plaintiff must identify when and how the defendant breached the specific contractual promise. *Posso v. Niagara Univ.*, No. 19-CV-1293 (LJV/MJR), 2020 WL 8771334, at *10 (W.D.N.Y. Nov. 2, 2020), *report and recommendation adopted*, 518 F. Supp. 3d 688 (W.D.N.Y. 2021) (citing inter alia *Gaily v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998)).  "Implicit in a student contract with a university is the requirement that the institution act in good faith in its dealings with its students." *Id.* (citing *Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408, 413-14 (1980)).

Plaintiff alleges that he was accepted into the Ph.D. program at Clarkson in 2017, and that the defendant suspended him on an "interim" basis in 2018 and "fired"[32] him

---

[32] Plaintiff implies that he was a Ph.D. candidate and worked for Clarkson, during that time period.  Thus, he could have been suspended from his educational program and fired from his job.

"unlawfully" on July 8, 2019. (Compl. Claim # 2 ¶¶ 3, 14 at 4, 6).  While such actions, depending on the facts of the case, could be violations of the "implicit contract" with plaintiff, he has failed to state sufficient facts for the court to determine whether there were any contract violations and whether supplemental jurisdiction would be appropriate, assuming that plaintiff has any federal claims which sufficiently relate to a potential contract claim.[33]  Thus, the court will recommend dismissal without prejudice of plaintiff's alleged "contract" claims as against Clarkson.

## V.    Claim # 3 (Defendants Jones, SLC Deputy Sheriff Maria, John Does ## 2-6, Coringi, Wells, Special Agent DHS Emily Davis,[34] Kroenjel, and Trimbold) (Compl. Claim # 3 at 14-18)

### A.    Relevant Facts

Plaintiff states that this claim involves criminal weapons possession charges that were brought against him in Pierrepont[35] Town Court. (Compl. Claim # 3 at 14-18).  Plaintiff alleges that these claims are in the nature of false arrest, malicious prosecution, conspiracy, and fabrication of evidence. (Compl. Claim # 3 ¶ A at 14).  The next several paragraphs of the complaint discuss a variety of events occurring over a variety of dates between 2018 and 2019.  Plaintiff cites these dates and mentions various individuals without specifying how these events relate to plaintiff's claim of false arrest

---

[33] The court notes that plaintiff states that, notwithstanding the order of protection, Clarkson gave him the opportunity to participate "in the process" by filing a written "response," which would not be viewed as a violation of any "no contact" directive. (Compl. Claim # 2 ¶ 13 at 6).

[34] Defendant Davis is a Special Agent with DHS; thus, she is a federal defendant and any claims against her would be brought pursuant to *Bivens, supra.*  Although the basis for jurisdiction is different, the legal standards are the same for both section 1983 and *Bivens* claims. *See Gonzalez v. Hasty*, 802 F.3d 212, 221 (2d Cir. 2015) (applying section 1983 standard to *Bivens* action)

[35] The town of Pierrepont, New York is in St. Lawrence County.

and malicious prosecution.

Plaintiff states that on August 24, 2018, defendant Sheriff John Jones "illegally searched [plaintiff's] legally owned weapons" and deprived him "from practice my Muslim religioun [sic]."[36] (Compl. Claim # 3 ¶ 1 at 14). Plaintiff claims that on August 25, 2018, two Jane Doe officers illegally searched his house while he "was arrested," took his weapons and a trash bag, and searched the entire residence. (Compl. Claim # 3 ¶ 3 at 14-15). Plaintiff claims that a *Miranda*[37] Rights waiver, signed by defendant SLC Deputy Sheriff Matthew Maria was fabricated because it showed that plaintiff was arrested on August 24, 2018 at "20:00," but plaintiff claims he was arrested at 23:05. (Compl. Claim # 3 ¶ 2 at 14).

Plaintiff claims that he was illegally arrested by John Does ## 4 and 5 on October 25, 2019[38] and was charged with Criminal Possession of a Weapon 3rd Degree, "signed by [defendant] Investigator Coringi."[39] (Compl. Claim # 3 ¶ 4 at 15). He states that this arrest resulted in false imprisonment at the SLC Jail. Plaintiff repeats his allegation from Claim # 2 that in November of 2018, defendant SLC Sheriff Wells sent an email,

---

[36] This is the only reference to plaintiff being "prevented" from practicing his religion, and the court could only speculate how the search for weapons would have prevented plaintiff from practicing his religion. Thus, any such claims would also be dismissed without prejudice.

[37] *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966).

[38] Although plaintiff has stated that he was arrested on October 25, 2019 for the weapons possession charges, the court believes this to be a typographical error because later in Claim # 3, he states that the weapons possession charges were reduced to misdemeanors and dismissed in the interests of justice on April 3, 2019. (*Compare* Compl. Claim # 3 ¶ 4 at 15 *with* Claim # 3 ¶ 12 at 16-17). Plaintiff may have meant October 25, 2018.

[39] It is unclear what was "signed" by defendant Coringi. Plaintiff may be referring to the charges themselves or to something completely different.

17

which was distributed to the New York State Police stating that plaintiff had illegal weapons. (Compl. Claim # 3 ¶ 6 at 15).[40]  This apparently resulted in a Potsdam Police Department SUV being parked outside of plaintiff's home "for hours" on November 13, 2018. (*Id.*)  Plaintiff then claims that in November of 2018, defendant New York State Police Officer Kroenjel, who is with the Counter Terrorism Intelligence Unit came to plaintiff's home and "interrogated" him without a lawyer present and without reading plaintiff his *Miranda* rights. (Compl. Claim # 3 ¶ 7 at 15-16).  Plaintiff claims that he was again "interrogated" on March 13 and March 15, 2019[41] by defendants Kroenjel and DHS Special Agent Davis with no attorney present and without reading plaintiff his *Miranda* rights. (Compl. Claim # 3 ¶ 8 at 16).

Plaintiff claims that defendants Kroenjel and Davis "tampered" with a "potential witness" on March 15, 2019, after the witness called the Potsdam Police on February 28, 2019 to protect the Mosque during "Muslim service on Friday." (Compl. Claim # 3 ¶ 10 at 16).  Plaintiff claims that on February 8, 2019, defendant Jones went to plaintiff's house without calling, just before Islamic services. (Compl. Claim # 3 ¶ 11 at 16).  Plaintiff alleges that defendant Jones opened the "first" door and tried to open the second door. (*Id.*)  Plaintiff states that defendant Jones testified on October 30, 2019 that he knew plaintiff was at the Mosque. (*Id.*)

Plaintiff states that on April 3, 2019, the weapons possessions charges were reduced to misdemeanors and dismissed in the interests of justice by the Pierrepont

---

[40] *See* Claim # 2 ¶ 14.

[41] Plaintiff alleges that the March 15th interrogation took place in the parking lot of a Hampton Inn. (Compl. Claim # 3 ¶ 9).

Town Court after the New York State Police determined that the weapons were possessed legally. (Claim # 3 ¶ 12 at 16-17). Plaintiff cites what appears to be a January 28, 2020 cross-examination of a deputy sheriff from plaintiff's stalking trial, during which the deputy admits that the weapons possessions charges were ultimately dropped because plaintiff legally owned the weapons. (Compl. Claim # 3 ¶ 13 at 17). However, plaintiff then cites a statement by defendant New York State Police Officer Judy Trimbold, indicating that Ms. Hosseini-Norovei reported that plaintiff had three weapons in his home, and Officer Trimbold indicated that the weapons were confiscated by law enforcement until "all weapons could be cleared as legally owned and possessed." (Compl. Claim # 3 ¶ 14 at 18). Apparently, there were audio recordings of telephone calls, made to confirm that the weapons were legally owned. (*Id.*) Finally, plaintiff alleges that Ms. Hosseini-Norovei met with defendant Davis and defendant SLC detective Sean O'Brien[42] on two occasions. (Compl. Claim # 3 ¶ 15 at 18).

## B.    Legal Standards

### 1.    False Arrest

Claims for false arrest brought under Section 1983 are "'substantially the same'" as claims for false arrest under state law. *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003)). In order to establish a claim for false arrest under New York law, the plaintiff must show that "'(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of

---

[42] Sean O'Brien is not a named defendant.

the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" *Id.* (quoting *Jocks*, 316 F.3d at 134-35 (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (1975) (alterations in original)).

### 2. Malicious Prosecution

Under New York law, malicious prosecution requires "(1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)).  With respect to the favorable termination element, the Supreme Court has recently stated that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. *Thompson v. Clark*, __ U.S. __, 142 S. Ct. 1332, 1341 (U.S. Apr. 4, 2022) (abrogating inter alia *Lanning v. City of Glenns Falls*, 908 F.3d 19 (2d Cir. 2018)). The plaintiff need only show that the criminal prosecution ended without a conviction. *Id.*  The plaintiff must still show that he was "seized as a result of the malicious prosecution," that the defendants initiated the prosecution with malice and without probable cause. *See id.* (Supreme Court remanded the case to consider these other "pertinent questions," including the issue of qualified immunity).  Finally, plaintiff must also show "actual malice" as a motivation for the defendant's actions. *Biton v. City of New York*, No. 21-23, 2022 WL 1448207, at *1 (2d Cir. May 9, 2022) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010)).

### 3.    Interrogation

Generally, "'no cause of action exists under 42 U.S.C. § 1983 for *Miranda* violations.'" *Gentry v. New York*, No. 1:21-CV-319 (GTS/ML), 2021 WL 3037709, at *7-8 (N.D.N.Y. June 14, 2021), *report and recommendation adopted*, No. 1:21-CV-319 (GTS/ML), 2021 WL 3032691 (N.D.N.Y. July 19, 2021) (quoting *Hernandez v. Llukaci*, No. 16-CV-1030, 2019 WL 1427429, at *7 (N.D.N.Y. Mar. 29, 2019) (Hurd, J.) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003)). "The failure to inform a plaintiff of his rights under *Miranda*, 'does not, without more, result in § 1983 liability.'" *Id.* (quoting *Deshawn E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998)).  The remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.'" *Id.* (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995) (internal quotations omitted).  *But see Tekoh v. Cnty. of Los Angeles*, No. 18-56414, 2021 WL 139725 (9th Cir. Jan. 15, 2021) (plaintiff could bring § 1983 claim predicated on *Miranda* violation when the *un-Mirandized* statement is used against him in criminal proceedings)), *cert. granted sub nom. Vega v. Tekoh*, 142 S. Ct. 858 (2022).  However, "'[a] *Miranda* violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, even when a confession is not used against the declarant in any fashion.'" *Id.* (quoting *Deshawn E. v. Safir*, 156 F.3d at 348 (internal citations omitted)).

### 4.    Conspiracy

In order to state a conspiracy claim under § 1983 a plaintiff must allege: (1) an

agreement between two or more state actors or between a state actor and private actor; (2) to act in concert to inflict an unconstitutional injury on plaintiff; and (3) an overt act committed in furtherance of that goal causing damages. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).  However, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello*, 292 F.3d at 325 (internal quotations and citation omitted); *see also Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds").  Plaintiff is not required to provide detailed factual allegations, however, the allegations in the complaint must be "'enough to raise a right to relief above the speculative level.'" *Flores v. Levy*, No. 07-CV-3753, 2008 WL 4394681, at *9 (E.D.N.Y. Sep. 23, 2008) (quoting *Twombly*, 550 U.S. at 554).

**5.    *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)**

Civil lawsuits may not be used to collaterally attack criminal convictions. *Id*.  In *Heck*, the Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. *Id.* at 486-87. *See also McDonough v. Smith*, 139 S.

Ct. 2149, 2156-57 (2019) (holding that a plaintiff could not bring a "fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution"); *Perry v. City of Albany*, No. 8:20-CV-165 (GTS/DJS), 2020 WL 3405636, at *4 (N.D.N.Y. May 6, 2020)("[c]laims of false arrest, false imprisonment, malicious prosecution, and fabrication of evidence are generally viewed as barred by the rule in *Heck*."), *report and recommendation adopted*, 2020 WL 3403080 (N.D.N.Y. June 19, 2020); *McFadden v. Jaeon*, No. 1:12-CV-1255 (NAM/RFT), 2012 WL 4107466, at *2 (N.D.N.Y Aug. 23, 2012) (barring claims for false arrest and "faulty *Miranda* warnings" pursuant to *Heck*), *report and recommendation adopted*, 2012 WL 4107465 (N.D.N.Y. Sept. 18, 2012); *Harris v. Buffardi*, No. 1:08-CV-1322 (GLS/DRH), 2011 WL 3794235, at *10 (N.D.N.Y. Aug. 24, 2011) (claims for "violation of his due process rights, fabrication of evidence, obstruction of justice, bad faith inadequate investigation, and §§ 1983 and 1985 conspiracy-all of which are patent attacks on the validity of [plainitff's] conviction-[were] barred.").

## C.    Analysis

Plaintiff's claims are very muddled.  He says at various times that he was "interrogated," but never claims that any statements were taken that were used against him in any prosecution.  To the extent that plaintiff claims only that he was interrogated without being afforded *Miranda* rights, such a claim, in itself is not cognizable.[43]  To

---

[43] The court notes that even if the Supreme Court affirms the Ninth Circuit decision in *Tekoh v. Cnty. of Los Angeles*, *supra*, the Ninth Circuit made clear that plaintiff would have a claim only if the statement taken in the absence of *Miranda* warnings was used against the plaintiff. *See Tekoh*, 985 F.3d at 724-25 ("We do not hold that taking an *un-Mirandized* statement always gives rise to a § 1983 action. We hold only that where government officials introduce an *un-Mirandized* statement to prove a criminal charge at a criminal trial against a defendant, a § 1983 claim may lie against the officer who

the extent that any statements were taken and used in the stalking prosecution, any such claims would be barred by *Heck* since the stalking/larceny conviction has not been overturned.  Thus, plaintiff's "interrogation" claims may be dismissed without prejudice.

The only "evidence" in his third claim that plaintiff alleges was "fabricated" appears to be a *Miranda* rights waiver, signed by defendant SLC Deputy Sheriff Matthew Maria. (Compl. Claim # 3 ¶ 2 at 14).  The alleged "fabrication" appears to be a three-minute error in the time of plaintiff's arrest on August 24, 2018.  Plaintiff does not explain how this waiver was used as "evidence" or how the error violated his rights.[44]  In addition, plaintiff does not claim anywhere in the complaint that he actually gave statements which were taken in violation of his constitutional rights, aside from his conclusory statements that the law enforcement officials neglected to give plaintiff his *Miranda* warnings or that the *Miranda* waiver was somehow falsified.  To the extent that the waiver was used in his stalking trial, any such claim would be barred by *Heck.*  Thus, plaintiff's claim against defendant Maria may be dismissed.

With respect to "conspiracy," the complaint contains only a passing reference to "conspiracy" in a list of other legal conclusions at the beginning of Claim # 3, without

---

took the statement.  By contrast, in cases like *Chavez*, where the suspect was never charged, or where police coerce a statement but do not rely on that statement to file formal charges, the Fifth Amendment is not implicated.") (citations omitted)).

[44] In order to be actionable under section 1983 the government official must manufacture false evidence against plaintiff, and the ***use*** of that fabricated evidence must result in the deprivation of the plaintiff's liberty. *McDonough v. Smith*, 139 S. Ct. at 2156-57; *accord Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000) ("It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer acting in an investigating capacity.")

describing who conspired or what that conspiracy may have entailed. Such conclusory allegations do not state a claim against any of the defendants. *Ciambriello*, 292 F.3d at 325.

Plaintiff's claims of false arrest and malicious prosecution are unclear in Claim # 3. Plaintiff claims that he was arrested by two SLC Sheriff John Does for the weapons charges while he was "in" Town Court, and that the charges were signed by defendant Investigator Coringi. (Compl. Claim # 3 ¶ 4 at 15). The Plaintiff alleges that the weapons charges were then reduced to misdemeanors and then dismissed in the interests of justice on April 3, 2019. (Compl. Claim # 3 ¶ 12 at 16-17). Plaintiff appears to have been arrested multiple times. He states that he was arrested on August 24, 2018,[45] then again October 25, 2018.[46] He appears to challenge only the October 25, 2018 arrest which, according to him, was false because the guns found in his residence were ultimately found to be legally owned. Plaintiff states that the Green County Sheriff's Department provided proof of plaintiff's legal gun ownership, but does not state when this occurred. Plaintiff does not allege how he believes the arrest was unsupported by probable cause, and in any event, the only officers involved in the arrest appear to be John Does. Defendant Coringi allegedly signed something, perhaps the charges, but plaintiff does not claim that he was involved in arresting the plaintiff. The court will recommend dismissing the false arrest claim without prejudice.

---

[45] This arrest was likely related to the stalking charges.

[46] As stated above, the complaint reads October 25, 2019, but that date cannot be correct because plaintiff states that the charges were dismissed on April 3, 2019. He could not have been arrested for the charges after their dismissal.

Based upon the Supreme Court's decision in *Thompson v. Clark*, *supra*, plaintiff has sufficiently alleged favorable termination of the gun charges, notwithstanding that he was subsequently convicted of the stalking charges. *See Harley v. Suffolk County Police Dep't*, No. 09–CV–2897 (JFB/ARL), 2012 WL 642431, at *8 n.5 (E.D.N.Y. Feb. 28, 2012) (conviction of some charges does not preclude malicious prosecution claim on those charges that were resolved in plaintiff's favor).

However, plaintiff has failed to allege that the prosecution for the gun charges was initiated with malice, and based on the rest of the facts as stated in the complaint, it is unlikely that plaintiff would be able to do so. It is clear that the defendants were concerned for the victim's safety, when she informed them that plaintiff was in possession of weapons. The weapons were seized until it was determined that they were legally owned, and the charges were dropped. Plaintiff was convicted of the stalking charges, further weakening any allegation that the defendants prosecuted him on the weapons charges with malice. Thus, without more, the court will recommend dismissing the plaintiff's malicious prosecution claims without prejudice.[47]

## VI. Claim # 4 (Town of Canton Police Officer Ryan Cole, SLJ Deputy Sheriff Jane Doe # 7, Davis, Kroenjel, Village of Potsdam Police Officer Kyle Fink, SLC Officer Matthew Maria, SLC District Attorney Gary Pasqua, and ADA Adam Stone) (Compl. Claim # 4 at 19-22)

### A.    Relevant Facts

Plaintiff begins Claim # 4 by stating that it relates to a May 3, 2019 "acquittal" in Canton Town Court, and he alleges that he is raising claims of false arrest, malicious

---

[47] Plaintiff may not allege malicious prosecution with respect to the stalking charges because he was convicted of those charges, and thus, he cannot establish favorable termination.

prosecution, conspiracy, fabrication of evidence, "and other events." (Compl. Claim # 4 at 19).  Plaintiff then cites a variety of incidents that may or may not be related to a separate prosecution for violating an order of protection and contempt of court. Plaintiff claims that he was "falsely arrested" on October 2, 2018 when defendant Cole and Jane Doe # 7 came to his house and "interrogated" him without *Miranda* rights and without his attorney present. (Compl. Claim # 4 ¶ 1 at 19).  Plaintiff claims that on March 15, 2019, defendants Davis and Kroenjel "tampered" with "the complainer," Ms. Hosseini-Norovei by telling her that plaintiff "reported her" to DHS and Immigration and Customs Enforcement ("ICE"). (Compl. Claim # 4 ¶ 2 at 19).  Without explanation, plaintiff alleges that on April 30, 2019, these defendants allegedly again "tampered" with Ms. Hosseini-Norovei and with Clarkson. (Compl. Claim # 4 ¶ 3 at 19-20).

Plaintiff claims that in May of 2018, defendant Kyle Fink told plaintiff to leave his residence, and on February 9, 2019, defendant Fink delivered the order of protection to plaintiff's home, but then "interrogated" him without reading him his *Miranda* rights or having his attorney present. (Compl. Claim # 4 ¶¶ 4-5 at 20).  Plaintiff then cites what appears to be testimony by defendant Maria at a "trial" on May 3, 2019, but plaintiff claims that the order of protection that was shown to defendant Maria during that testimony as "Exhibit One" was "fabricated" because "writing was added to the original document." (Compl. Claim # 4 ¶ 6 at 20).  The testimony indicates that the order of protection was given to the plaintiff when he was arrested on the stalking charges on August 25, 2018.[48] (*Id.*)

---

[48] Plaintiff points out that he was arrested late on August 24, 2018, but was not arraigned until August 25, 2018.  He states that he was "deprived of sleep," but does not name any defendant who

Plaintiff next cites testimony by defendant Cole indicating that he was not familiar with "Whats App." (Compl. Claim # 4 ¶ 8 at 21). Plaintiff claims that defendants DA Pasqua and ADA Stone failed to disclose "exculpatory evidence" but does not explain what that exculpatory evidence might have been or how it would have been exculpatory. (Compl. Claim # 4 ¶ 9 at 21). Instead, plaintiff quotes his own testimony - perhaps on cross-examination - during which the prosecutor read from an email that plaintiff sent to Clarkson regarding Ms. Hosseini-Norovei. Finally, plaintiff claims that defendant Davis "texted" ADA Stone's cellular telephone number to Ms. Hosseini-Norovei on April 30, 2019. (Compl. Claim # 4 ¶ 10 at 22).

## B.    Legal Standards[49]

### 1.    Prosecutorial Immunity

Prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the grand jury).

Absolute immunity is defeated only when the prosecutor is engaging in

---

might have been responsible for such deprivation. (Compl. Claim # 4 ¶ 7).

[49] The majority of the legal standards were stated above. This section adds the standard for prosecutorial immunity.

investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

## C.    Analysis

As stated above, plaintiff's claims regarding his "interrogation" by various officers without *Miranda* warnings or the presence of counsel do not, in themselves, state a claim and may be dismissed against defendants Cole, Fink, and Jones. To the extent that plaintiff names DA Pasqua or ADA Stone for failing to disclose exculpatory evidence during or before the trial, both of these defendants would be entitled to absolute immunity. Plaintiff does not allege that these district attorney defendants committed any violations that were not associated with the prosecution of plaintiff's criminal charges. Thus, the claims against them may be dismissed with prejudice.[50]

Plaintiff's claims of "conspiracy" in Claim # 4 are as conclusory as they were in the rest of the complaint. Thus, his conspiracy claims may be dismissed. Defendant

---

[50] There are two other Assistant District Attorneys named in the complaint. One is defendant Alex Nichols. Plaintiff refers to him only when he cites the Law 360 article in which defendant Pasqua thanks defendant Nichols for his assistance in prosecuting the case, and then states that defendant Nichols mother worked for Clarkson. (Compl. Claim # 2 ¶ 16(a) at 9-10). To the extent that such a vague statement of facts raises any claim against defendant Nichols for some kind of bias, he would be entitled to absolute immunity for his assistance in prosecuting the plaintiff's criminal case, regardless of any bias alleged by the plaintiff. The caption of the complaint names SLC ADA Jason Mary, but the court has not found any factual assertions against this defendant in the body of the complaint. Thus, the complaint may be dismissed against him with prejudice for any actions he took prosecuting plaintiff's criminal case.

Maria is only mentioned in the claim because he testified at a trial and was shown a piece of evidence that plaintiff alleges was "fabricated." "[A] trial witness has absolute immunity with respect to any claim based on the witness' testimony." *Rehburg v. Paulk,* 566 U.S. 356, 367-68 (2012) (discussing *Briscoe v. LaHue*, 460 U.S. 325, 332-36 (1983)) (witnesses include police officers who testify).

Plaintiff claims that defendants Davis and Kroenjel "tampered" with the "complainer" by telling her that plaintiff had made complaints about her to immigration authorities. Plaintiff may be trying to allege that by giving Ms. Hosseini-Norovei this information, it would somehow bias her against the plaintiff. While plaintiff may be referring to a different prosecution, this conduct would be so intertwined with the prosecution for which plaintiff was convicted, that such a claim would be barred by *Heck*. If in fact, plaintiff claims that somehow defendants Davis and Kroenjel were attempting to influence Ms. Hosseini-Norovei's testimony, then a decision in plaintiff's favor could affect the plaintiff's stalking conviction. Thus, any such claim against defendants Davis and Kroenjel may be dismissed without prejudice.

To the extent that plaintiff claims that defendants Davis and Kroenjel "tampered" with a "potential" witness on March 15, 2019, plaintiff does not state any facts upon which he bases this claim, nor does he associate the "tampering" with a particular prosecution. Thus, this claim may be dismissed against both Davis and Kroenjel. Any conduct that occurred after May 3, 2019, when plaintiff states that the weapons charges were dismissed would necessarily be related to the plaintiff's stalking prosecution and would be barred by *Heck*.

## VII.  **Claim # 5 (John Does ## 8-66)**

### A.    **Relevant Facts**

Plaintiff's last claim is completely unrelated to the first four claims.  In this claim, plaintiff alleges that he was deprived of medication and food at the St. Lawrence County Jail. (Compl. Claim # 5).  Unfortunately, plaintiff has cited April, May, and June of 2019 as the dates relevant to his claim, but in the next paragraph, he states cites conduct which began in late April of 2020. (Compl. Claim # 5 at 23).

Plaintiff alleges that in late April of 2020, John Doe # 8 "deprived" plaintiff of his medication because he did not give the medication to plaintiff until after he started his Muslim fast, and therefore, plaintiff was not able to take the medication. (Compl. Claim # 5 ¶ 1 at 23).  However, it appears that plaintiff has written that the officer "accidentally"[51] gave plaintiff his medication after plaintiff began his fast. (*Id.*) Whether plaintiff was still a pretrial detainee or a convicted prisoner[52] when the alleged conduct occurred, a section 1983 claim requires the defendant to have acted with a mental state greater than mere negligence. *Darnell v. Pineiro*, 849 F.3d 17, 37 (2d Cir. 2017). If the defendant "accidentally" gave plaintiff his medication after he was able to take it, plaintiff has not stated that the defendant acted with more than mere negligence.

---

[51] Although the court had difficulty deciphering plaintiff's handwriting, he appears to have spelled the word "accentially [sic]" or "attentially [sic]." (Compl. Claim # 5 p.23, Dkt. No. 1 at 36).

[52] If plaintiff means 2019, he was still a pretrial detainee.  However, plaintiff was convicted in February of 2020, thus, if he means that the conduct occurred in 2020, he was a convicted prisoner.  It is likely that plaintiff is referring to 2020 because the rest of Claim # 5 relates to events in 2020.  A convicted prisoner is protected from cruel and unusual punishment by the Eighth Amendment while a pretrial detainee is protected by the Due Process Clause of the Fourteenth Amendment.  While the standards are slightly different, both standards require more than negligence by the defendant in order to state a claim. *Darnell, supra.*

Thus, as written, plaintiff's claim against John Doe # 8 may be dismissed for failure to state a claim.

Plaintiff then states that in "late" April, defendants John Doe ## 9-65 deprived plaintiff of food for 19 consecutive days. (Compl. Claim # 5 ¶ 2 at 23). Plaintiff claims that he lost 30 pounds, and his heart rate increased to 130 beats per minute. Plaintiff states that "around the last 7 days," the jail medical staff began monitoring plaintiff's vitals daily and told him that his heart could "rupture at any time." (*Id.*) The St. Lawrence County Supreme Court "ordered the jail to allow me to eat." (*Id.*) On an unspecified date, plaintiff alleges that he was taken to Canton Potsdam Hospital. (*Id.*)

Plaintiff also claims that John Doe # 66 told plaintiff that he was working as security at Clarkson, and that the United States was a "Christian" country. (*Id.*) Plaintiff states that, at 3:30 p.m. on March 27, 2020, "Officer Cross"[53] gave plaintiff food, with plaintiff's name handwritten on the bag. Plaintiff claims that by 4:00 p.m., he was experiencing severe ("10 of 10") abdominal pain, but Officer Cross told plaintiff that "no medical to see me 'til 7am." (Claim # 5 at ¶ 4 at 23-24). Instead, Officer Cross gave plaintiff an "unidentified liquid." (Claim # 5 ¶ 4 at 24). Plaintiff was moved to a different cell, and Officer Whitmarch[54] gave him some more unidentified liquid. (*Id.*)

Plaintiff claims that he began to experience bloody diarrhea. A nurse checked in on plaintiff at approximately 7 a.m., and he was sent back to his housing unit.

---

[53] Officer Cross is not listed as a defendant.

[54] Officer Whitmarch is not listed as a defendant.

However, the pain did not go away, and he informed Housing Officer Shoen.[55]  A nurse came back to check on plaintiff, he was again taken to a different cell, and ultimately transported to Canton Potsdam Hospital. (*Id.*)  Plaintiff states that the medical staff at the hospital performed several tests, and that the blood work showed "possion [sic] trace" in his blood. (*Id.*)  At the end of his recitation of the facts, plaintiff states that on June 24, 2020, defendant John Doe # 66 called plaintiff and made a "'white power hand sign" to him. (*Id.*)

While failing to feed plaintiff for 19 days could rise to the level of a constitutional violation, plaintiff's allegations against 56 John Doe defendants falls short of stating a claim.  Plaintiff's allegations are vague and conclusory. Attempting to poison plaintiff could also rise to the level of a constitutional violation.  However, plaintiff has not made any claims against any specific defendants that would indicate such conduct, and plaintiff's allegation that traces of poison were found in his bloodstream does not clarify his claim.  He does not name any of the individuals as defendants who he says were involved in giving him food or giving him an "unknown" liquid.  It is unclear if he claims that there was poison in the food or poison in the unknown liquid.  Thus, the court will recommend dismissing plaintiff's final claim without prejudice to plaintiff amending the complaint to make his allegations more clear.

Finally with respect to John Doe # 66 telling plaintiff that the United States was a Christian country and making a "white power" hand sign at plaintiff, while

---

[55] Officer Shoen is not listed as a defendant.

unprofessional, inappropriate, and offensive, such conduct does not rise to the level of a constitutional violation. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (use of vulgar or offensive language is not a constitutional violation, where no injury resulted from the conduct). In this case, plaintiff states only that an unknown officer made a "white power" sign. There is no indication that anything else occurred. Thus, any such claim may be dismissed, even if plaintiff had identified a particular defendant as responsible for the conduct.

## VIII. Municipal Liability and Municipal Entities (St. Lawrence County; Greene County; Village of Potsdam; Town of Canton; Town of Canton Police Dep't; Village of Potsdam Police Dep't; St. Lawrence County Sheriff's Dep't; Greene County Sheriff's Dep't)

### A. Legal Standards

In order to state a claim for municipal liability, plaintiff allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted). "'Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued.'" *McCloud v. Dzurenda*, No. 20-CV-6393, 2021 WL 1924181, at *3 (E.D.N.Y. May 13, 2021) (quoting *Rose v. County of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012)) (additional citations omitted).

### B. Analysis

Plaintiff has named the police departments of several municipalities, and he has

also named the municipalities themselves as separate defendants. Plaintiff's complaint against the police departments may be dismissed because they are not amenable to suit and because plaintiff has already named the municipality.

Turning to the municipalities, plaintiff has failed to allege in any discernable fashion that his alleged constitutional violations (to the extent that he has alleged any constitutional violations) were caused by a policy or custom of any of the municipalities. Plaintiff appears to have named the municipalities solely on the basis that they employed the officers who plaintiff claims violated his rights. Thus, plaintiff's claims against St. Lawrence County; Greene County; Village of Potsdam; Town of Canton; Town of Canton Police Dep't; Village of Potsdam Police Dep't; St. Lawrence County Sheriff's Dep't; and Greene County Sheriff's Dep't may all be dismissed. The claims against the police departments may be dismissed with prejudice, while the claims against the municipalities themselves may be dismissed without prejudice.

## IX.    **Personal Involvement**

### A.    **Legal Standards**

It has long been established that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983[,]" and supervisory officials may not be held liable merely because they held a position of authority. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). In *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), the Second Circuit articulated standards for courts to use when

determining personal involvement or supervisory liability.[56]

However after the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the factors articulated in *Colon* were called into question. District courts, including the Northern District of New York[57] noted the possibility that the *Colon* factors were no longer viable, but that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y.2011)); *Young v. Choinski*, 15 F. Supp. 3d 172, No. 3:10-CV-606, 2014 WL 962237, at \*10–12 (D. Conn. Mar. 13, 2014) ("Although *Iqbal* does arguably cast doubt on the viability of certain categories of supervisory liability, where the Second Circuit has not revisited the criteria for supervisory liability, this Court will continue to recognize and apply the

---

[56] These factors were:
> (1) the defendant participated directly in the alleged constitutional violation;
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.

[57] *See e.g. Vance v. State of New York*, No. 9:19-CV-748 (BKS/ATB), 2020 WL 7481585, at \*3 & n.3 (N.D.N.Y. Nov. 30, 2020) (discussing cases), *report-recommendation adopted*, 2020 WL 7480955 (N.D.N.Y. Dec. 18, 2020).

*Colon* factors.").

Recently, pursuant to *Iqbal*, and in the context of the appeal of a qualified immunity issue, the Second Circuit has specifically revised its standard for determining personal involvement or supervisory liability, finding that the *Colon* factors are no longer controlling and articulating the proper standard for the courts in this circuit to utilize. *Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020).

Joining other circuits, the Second Circuit held that, after *Iqbal*, there is no "special" rule for supervisory liability. *Id*.

> Instead, a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 . . . . "The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue" because the elements of different constitutional violations vary. *Id*. The violation must be established against the supervisory official directly.

*Id*. (quoting *Iqbal*, 556 U.S. at 676). The supervisor must have committed the violation him or herself, not by the supervision of others who committed the violation. *Id*. Likewise, the supervisor must personally display the requisite state of mind, depending on the violation at issue. *Id*. Where a section 1983 claim fails to allege the personal involvement of the defendant, it fails as a matter of law. *See Johnson v. Barney*, 360 F. App'x 199, 201 (2d Cir. 2010).

## B.    Analysis

Plaintiff has named Kevin Wells, Former[58] Sheriff of St. Lawrence County, and

---

[58] Defendant Wells retired in December of 2019. https://www.wwnytv.com/2019/12/31/st-lawrence-countys-sheriff-retires-reflects-career/

Brooks Bigwarfe, the current Sheriff of St. Lawrence County as defendants. As stated above, the only claim that plaintiff makes against defendant Wells is that he forwarded an email to other individuals, including the New York State Police discussing plaintiff's possession of weapons. (Claims ## 2 ¶ 14, 3 ¶ 6). Plaintiff does not allege how sending an email violated his constitutional rights, and defendant Wells does not appear to have been involved in any of the other conduct alleged. Plaintiff has failed to allege personal involvement of this defendant.

Brooks Bigwarfe is the current St. Lawrence County Sheriff,[59] replacing defendant Wells in December of 2019, and he is not mentioned anywhere in the body of plaintiff's complaint. Plaintiff has clearly named this defendant in his supervisory capacity only, and has failed to allege his personal involvement. Thus, the complaint may be dismissed as against these two defendants.

The court notes that plaintiff only alleges that defendant Trimbold made a statement regarding the confiscation of plaintiff's weapons and assisted with some other information. Plaintiff does not alleges that this defendant was involved in plaintiff's arrest or prosecution. Thus, the complaint may also be dismissed against defendant Trimbold for lack of personal involvement. Finally, plaintiff briefly states that someone named "Val" helped the district attorney with some unknown administrative help. It is unclear what for what constitutional claim plaintiff alleges that Val is responsible. Thus, the complaint may be dismissed without prejudice as to this defendant.

---

[59] https://www.stlawco.org/Departments/Sheriff/Contact

## XI.    Opportunity to Amend

### A.    Legal Standards

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B.    Analysis

Plaintiff's complaint is long, prolix, and confusing.  The claims against defendants GE and Clarkson may be dismissed without prejudice, based on a lack of jurisdiction, but without the opportunity to amend.  The claims against the prosecutors may be dismissed with prejudice because no amendment will change their entitlement to absolute immunity.  The claims against the police departments may also be dismissed without opportunity to amend because plaintiff has named the municipalities separately. The rest of plaintiff's complaint fails to state a claims as discussed above, but the court will recommend affording plaintiff an opportunity to amend his complaint to remove extraneous material, to identify the wrongs that he believes were committed against him based on the above discussion of the law, and to state only claims against individuals who were personally involved in the alleged violations.

To the extent that plaintiff's claims are barred by *Heck*,[60] the court recommends that the claims be dismissed without prejudice, but without the opportunity to amend until the plaintiff can show that the conviction upon which those claims are based has been overturned.  With respect to plaintiff's conditions of confinement claim, if plaintiff chooses to amend, he must clarify the claim he is making about his food and his apparent "poisoning" claim.

## XII. <u>John/Jane Doe Defendants</u>

### A. **Legal Standards**

Plaintiff is advised that service of process cannot be effected on a "John or Jane Doe" defendant.  In the event plaintiff wishes to pursue his claims against these 66 defendants, plaintiff would have to take reasonable steps to ascertain their identities. While plaintiff is entitled to begin an action naming a John or Jane Doe if he is unfamiliar with their identity, plaintiff will have to seek to determine the identity of the "Doe" defendants through discovery.  When plaintiff determines the identity of a "Doe" defendant, he may seek to amend his pleading to add the properly named defendant(s) pursuant to Fed. R. Civ. P. 15.  Plaintiff is further advised that if these unnamed individuals are not timely served, the action may be dismissed against them.

**WHEREFORE**, it is

**ORDERED**. that plaintiff's motion to proceed IFP (Dkt. Nos. 2, 6) is

**GRANTED FOR PURPOSES OF FILING ONLY**, and it is

---

[60] This involves any claims relating to the stalking conviction if a decision in plaintiff's favor on the claim would affect the validity of the stalking conviction.  The court understands that many things were happening at the same time and at least three jurisdictions were involved in the investigation, including counties, towns, villages, New York State, and the federal government.

**RECOMMENDED**, that the entire complaint be **DISMISSED WITH PREJUDICE AS AGAINST DEFENDANTS DA GARY M. PASQUA; ADA ADAM STONE, ADA JASON MARY; ADA ALEX NICHOLS; POTSDAM POLICE DEPARTMENT; CANTON POLICE DEPARTMENT; and GREENE COUNTY SHERIFF'S DEPARTMENT**, and it is

**RECOMMENDED**, that the entire complaint be dismissed **WITHOUT PREJUDICE, BUT WITHOUT THE OPPORTUNITY TO AMEND** as against defendants General Electric and Clarkson University, and it is

**RECOMMENDED**, that the entire complaint be dismissed **WITHOUT PREJUDICE AS TO ALL OTHER DEFENDANTS** as discussed above, and that if the court adopts this Order and Report-Recommendation, plaintiff be given 45 days from the date of the court's order to amend his complaint accordingly in accordance with the law set forth in the above decision, and it is

**RECOMMENDED**, that if plaintiff fails to amend his complaint or ask the court for an extension of time to do so, the complaint be dismissed without further order of the court, and it is

**RECOMMENDED**, that if plaintiff files an amended complaint, the amended complaint be returned to me for further review.

**ORDERED,** that the Clerk of the Court shall serve a copy of this Order and Report-Recommendation on plaintiff in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.

41

Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:     May 16, 2022

Andrew T. Baxter
U.S. Magistrate Judge