## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

AHMED S. KHALIL,

                                       Plaintiff,

       v.                                       5:22-CV-312
                                                (GTS/ATB)

GENERAL ELECTRIC CORP, et al.,

                                         Defendants.

---

AHMED S. KHALIL, Plaintiff, pro se

ANDREW T. BAXTER, U.S. Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

On May 16, 2022, I issued an Order and Report-Recommendation after an initial review of the plaintiff's civil rights complaint, pursuant to 28 U.S.C. § 1915. (Dkt. No. 8) ("May 2022 ORR"). In the May 2022 ORR, I granted the plaintiff's motion to proceed in forma pauperis ("IFP"), but recommended dismissal of the complaint, without prejudice to plaintiff filing an amended complaint as to certain claims. (*Id.* at 39-42). On September 15, 2023, the Honorable Glenn T. Suddaby accepted and adopted the May 2022 ORR in its entirety, and directed that any amended complaint be returned to me for further review. (Dkt. No. 16). Plaintiff filed an amended complaint on October 30, 2023, which is now before me pending review. (Dkt. Nos. 17, 18) ("AC").

## I.     __The Amended Complaint__

Plaintiff's amended complaint is equally, if not more, difficult to decipher as compared to his original complaint. (*Compare* Dkt. No. 1 ("Compl.") *with* AC). The amended pleading presents as a confusing stream of consciousness replete with spelling and grammatical errors, and includes over 90 named and Jane/John Doe defendants. (AC at 2-22). The recitation of facts in the amended complaint, which are not presented in any chronological order, concern plaintiff's purported involvement with the Central Intelligence Agency ("CIA") via his employment with General Electric ("GE"), his enrollment as a graduate student at Clarkson University, and criminal investigations of him which, apparently, ultimately led to his incarceration. (*See generally* AC). As best the court can decipher, plaintiff's factual allegations are substantially similar to those raised in his original complaint, with the exception of several new claims arising while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). (*Compare* Compl. *with* AC).

Notwithstanding the overarching futility of the claims raised in plaintiff's original complaint, I undertook a careful analysis of the named defendants and claims in my May 2022 ORR. For this reason, and considering the plaintiff's continued failure to present this court with an overall coherent pleading, the court will not endeavor to restate the factual allegations as pled in the amended complaint, but will address them as necessary in assessing the sufficiency of plaintiff's claims.

## II.    __Defendants GE and Clarkson University__

### A.    __State Action/§ 1983 Claim__

In the May 2022 ORR, I explained that, in order to be liable for a section 1983 violation, the defendant must act under color of state law.  (May 2022 ORR at 7-8).  I further discussed that defendants GE and Clarkson University were private entities, and that plaintiff failed to allege how any conduct on their behalf amounted to state action, including any purported cooperation with law enforcement and/or federal government agencies.  (*Id.* at 7-8, 14-15).

Plaintiff has again named GE and Clarkson University in his amended complaint, making substantially similar factual allegations relating to these defendants.  Many of the allegations are impossible to understand, despite the court's most liberal reading.  In any event, plaintiff's baseless and unsupported claims that GE and Clarkson University were "front companies" for the CIA still do not suffice to establish a conspiracy or state action for purposes of this review, much less state a plausible cause of action.  Accordingly, and for the reasons more fully set forth in the May 2022 ORR, the amended complaint should be dismissed without prejudice, but without leave to amend,[1] as against GE and Clarkson University for lack of subject matter jurisdiction, to the extent it raises any section 1983 claims against these entities.

---

[1] In the May 2022 ORR, which the district court adopted in its entirety, I recommended that the original complaint be dismissed **without** leave to amend as against GE and Clarkson University. (May 2022 ORR at 41).

### B.     Employment Discrimination

Plaintiff alleges that he was employed by General Electric since at least 2013, where he was trained to work in various capacities including gas turbine field engineer, steam turbine field engineer, and generator second man.  (AC at 32, 34-35).  He states that his field service reports were evaluated as "some of the best out [of] the group, extremely detailed and are a model for others to follow[.]" (AC at 35).

Plaintiff further alleges that

> On or about January 1st, 2017 I was promoted to "Lead Steam Turbine Application Engineer" the job I applied for originally, on or about January 1st, 2017 "Lead Engineer -Mechanical Component" in order to maliciously do the illegal firing on April 30, 2017.

(AC at 35).

Plaintiff then alleges several instances of "discrimination" that occurred prior to his "illegal firing," including a supervisor's comment that " 'this shouldn't be done like this, you may do it like this in the Middle East,' or words to that effect."  (AC at 36). He also states that a GE coworker "repeatedly posted offensive images and comments on social media targeting [plaintiff's] religion and national origin," citing to specific instances.  (*Id.*).  Plaintiff further alleges that on July 17, 2014, he was subject to "clear discriminatory treatment" based upon an email exchange regarding his citizenship status.  (*Id.*).  Plaintiff states that he has "repeatedly suffered harassing statements from his manager" regarding his religion, and suggestions that plaintiff change his first name to an "American name," which plaintiff told his manager "made him uncomfortable." (AC at 37).  Plaintiff alleges that when he interviewed for his position at GE, the

4

interviewer "mocked his name." (*Id.*). Between January 20, 2017, and February 17,

2017, plaintiff's coworker made continuing, "derogatory" comments about plaintiff

having been "raised in a . . . dangerous place, Cairo." (*Id.*). Plaintiff also states that

during this time, he "repeatedly applied for promotions, and never got called for

interviews, despite his good work and numerous accolades." (*Id.*). He alleges that

although he "properly" identified himself as "white" on his employment application, he

was re-classified as "two or more races," which he unsuccessfully attempted to change

"from 2013 to 2016[.]" (*Id.*).

Plaintiff states that on or about March 23, 2017, he "was told" he would be fired,

and that his lawyer at the time sent GE a "demand letter stat[ing] some complaints

[plaintiff] filed at GE[.]" (AC at 35). He claims that in April 2017, GE informed him

that he was "under investigation," and on or about April 30, 2017, the CIA, FBI, and

GE "breached the contract between themselves and [plaintiff,]" and that GE "wanted

[plaintiff] to sign to waive [his] right to pursue covered claims against the company . . .

which [he] did not sign[.]" (AC at 38).

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"),

makes it unlawful for an employer to "discriminate against any individual with respect

to his . . . terms, conditions, or privileges of employment, because of such individual's

race, color, religion, sex, or national origin." 42. U.S.C. § 2000e-2(a). In a Title VII

discrimination case, the plaintiff must allege two elements: "(1) the employer

discriminated against him (2) because of his race, color, religion, sex, or national

origin." *Lorefice v. New York*, No. 22-2037-CV, 2023 WL 7271838, at *2 (2d Cir. Nov.

3, 2023) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).

Liberally construed, plaintiff alleges that he was subjected to wrongful termination and a hostile work environment in violation of Title VII, based on, at least, his national origin and religion. Title VII, however, also requires a claimant who desires to bring a suit in federal court to file a charge of discrimination with the [Equal Employment Opportunity Commission ("EEOC")] within one hundred eighty (180) days 'after the alleged unlawful employment practice occurred,' or within three hundred 300 days of the alleged discrimination if the claimant 'has initially instituted proceedings with a State or local agency with authority to grant or seek relief . . . or to institute criminal proceedings.' " *McNight v. Dormitory Auth. of State of N.Y.*, 995 F. Supp. 70, 76 (N.D.N.Y. 1998) (quoting 42 U.S.C. § 2000e-5(e) ). Thus, "only after charges are brought before the EEOC and a right-to-sue letter is obtained may an aggrieved party bring an action for relief in federal court." *Mazzeo-Unum v. Dep't of Transp.*, No. 12-CV-1856 (TJM), 2013 WL 2636159 (N.D.N.Y. June 12, 2013) (citing 42 U.S.C. § 2000e-5(e) ); *Dollinger v. State Ins. Fund*, 44 F. Supp. 2d 467, 474 (N.D.N.Y. 1999) (citing *Niroomand v. Erie Cnty. Med. Ctr.*, 94-CV-21E(H), 1996 WL 328183, at *7 n.20 (W.D.N.Y. June 4, 1996) ) (additional citations omitted); s*ee also Pietras v. Board of Fire Comm'rs*, 180 F.3d 468, 474 (2d Cir. 1999).

Here, plaintiff fails to allege or otherwise demonstrate that he filed a claim with the EEOC or with any state or local agency, as described in 42 U.S.C. § 2000e-5(e), before commencing this action, and has failed to provide a "right to sue letter" from the

EEOC relating to the alleged discrimination described in his amended complaint.  Thus,

plaintiff has failed to establish the threshold requirements for his Title VII claim.

Accordingly, the court recommends that plaintiff's employment discrimination claim be

dismissed without prejudice. *Johnson v. Xylem Inc*., No. 19-CV-0130, 2020 WL

1963125, at *2 (W.D.N.Y. Apr. 16, 2020) (citing *Constantine v. U-Haul Int'l, Inc*., No.

15-CV-1204 (MAD/CFH), 2015 WL 7272211, at *2 (N.D.N.Y. Nov. 16, 2015)

(dismissing the plaintiff's Title VII claim where the plaintiff failed to demonstrate that

she received an EEOC right-to-sue letter)); *Parker v. Mack*, No. 09-CV-1049A, 2010

WL 11507368, at *3 (W.D.N.Y. Jan. 4, 2010) (holding that the plaintiff's Title VII

claims were subject to dismissal where the plaintiff did not submit a copy of his EEOC

right-to-sue letter).

### C.    Breach of Contract

The amended complaint reasserts plaintiff's purported breach of contract claims

against GE and Clarkson University.  (AC at 30).  As was the case with plaintiff's

original complaint, it remains completely unclear from plaintiff's recitation of facts in

the amended complaint how he believes that GE breached a contract with the plaintiff,

other than plaintiff's reference to the CIA, FBI, and GE breaching "the contract

between themselves and myself," when he was laid off.  (AC at 38).  Nor has plaintiff

referenced how Clarkson University violated any contract that it had with plaintiff,

implicit or otherwise.  Accordingly, and for the reasons more fully set forth in my May

2022 ORR, the breach of contract claims against GE and Clarkson University, as raised

7

in the amended complaint, should be dismissed with prejudice for failure to state a claim.

## II.     **Individual Federal Defendants**

Plaintiff has identified numerous individual defendants in his amended complaint, whom he identifies as FBI agents, CIA "sources," and a Department of Homeland Security Special Agent. (AC at 4-22). A careful reading of the amended complaint suggests that the majority of the named CIA sources were plaintiff's coworkers and/or supervisors at GE. Another, defendant--Hosseini-Norouei--appears to be the plaintiff's "ex fiancé." (AC at 40). Throughout the amended complaint, plaintiff makes various references to these individuals, alleging that he communicated with some of them.

Plaintiff's allegations as against these defendants, even under the most liberal reading afforded to pro se pleadings, border on the implausible. Specifically, and based on plaintiff's allegations in their entirety, the court has serious doubts concerning his representation that the majority of these defendants were, in fact, covert federal agents. *See Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) ("A court may dismiss a claim as factually frivolous if the sufficiently well-pleaded facts are clearly baseless--that is, they are fanciful, fantastic, or delusional.") (internal quotation marks omitted). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Khalil v. United States*, Nos. 17-CV-2652 & 17-CV-5458, 2018 WL 443343, at *3-4

(E.D.N.Y. Jan. 12, 2018) (dismissing complaint alleging broad conspiracy as frivolous), *Bussie v. IRS Commissioner*, Nos. 16-CV-7006 & 17-CV-157, 2017 WL 395113, at *3 (E.D.N.Y. Jan. 27, 2017) (dismissing "indisputably meritless" complaint as frivolous).

In any event, plaintiff has failed to plausibly allege that any of these individual defendants have engaged in conduct violating his constitutional rights, much less acted in conspiracy to do so. Thus, and for the reasons more fully set forth in the May 2022 ORR, plaintiff's amended complaint should be dismissed with prejudice as against defendants Hosseini-Norouei, Burke, Chow, Marcia, Rosania, Doe #74, Ahmed, Doe #75, Doe #76, Darius, Farzi, Doe #77, Atchan, Ahmadi, Mirbod, and Erath.

## V. <u>Prosecutorial Immunity</u>

The legal standards for prosecutorial immunity were discussed in the May 2022 ORR, on which I based my recommendation that the original complaint be dismissed with prejudice as against defendants District Attorney Gary Pasqua and Assistant District Attorneys Adam Stone, Jason Marx,[2] and Alex Nichols. (May 2022 ORR at 28-29). Notwithstanding the district court's adoption of my recommendation, plaintiff has reasserted claims against these defendants in his amended complaint. Specifically, plaintiff complains of DA Pasqua and ADA Stone's conduct associated with the prosecution of plaintiff's criminal charges in or around 2019. (AC at 51, 57). Moreover, in the amended complaint plaintiff alleges that ADA Marx appeared for and was "handling" a "family offense petition" and criminal charges against plaintiff

---

[2] In the May 2022 ORR, I interpreted plaintiff's handwritten complaint to identify this defendant as Jason **Mary**. (May ORR at 41). In his typed amended complaint, plaintiff identifies this defendant as Jason **Marx.** (AC at 67).

9

pending in St. Lawrence County in 2019. (AC at 67). Because plaintiff has not alleged that these defendants committed any violations outside the scope of their duties concerning the prosecution of plaintiff's criminal charges, the amended complaint should be dismissed with prejudice as against them.

With respect to ADA Nichols, the amended complaint merely states that ADA Nichols's mother worked at Clarkson University. (AC at 51). Plaintiff has failed to plausibly allege any conduct by ADA Nichols that would amount to a constitutional violation, much less plead that such conduct was outside the scope of his duties as a prosecutor. Accordingly, the amended complaint should be dismissed with prejudice as against ADA Nichols as well.

## VI. <u>Defendant Law Enforcement Officers</u>

In his amended complaint, plaintiff names ten St. Lawrence County Deputy Sheriffs/Investigators, three New York State Troopers, two Greene County Deputy Sheriffs, two Village of Potsdam Police Officers, and one Town of Canton Police Officer as defendants. (AC at 2-22). With respect to these defendants, plaintiff generally alleges claims sounding in false arrest, malicious prosecution, conspiracy, fabrication of evidence, and "other events as . . . described[.]" (AC at 30). Notably, several of the defendants are not referenced anywhere in the factual recitation of plaintiff's allegations. As discussed in the May 2022 ORR, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983[,]" and supervisory officials may not be held liable merely because they held a position of authority. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.

10

1994) (citations omitted); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Thus, to the extent plaintiff has failed to reference, much less describe the offending conduct of, defendants Bigwarfe, Doe #67, Doe #1, and Doe #6, the amended complaint should be dismissed with prejudice as against them.

Otherwise, plaintiff's purported false arrest, malicious prosecution, conspiracy, and fabrication of evidence claims against the remaining law enforcement agents noted above are completely muddled, conclusory, and otherwise impossible to decipher. Presumably sometime around the time that plaintiff's employment with GE was terminated, he became the subject of a criminal investigation. (AC at 38). Nevertheless, it is nearly impossible to follow plaintiff's narrative of the events giving rise to his purported constitutional violations with respect to these defendants, even under the most liberal of interpretations afforded to pro se litigants. (*See* AC at 38-39, 49, 52-56, 65). In particular, plaintiff makes conclusory statements that his home was "illegally searched" and that he was "falsely arrested." (AC at 52). In the May 2022 ORR concerning these claims, I found that plaintiff's allegations, without more, were insufficient to plausibly allege a constitutional violation. (May ORR at 23-30). Despite being afforded the opportunity to amend his complaint and remedy the noted deficiencies, plaintiff has failed to coherently supplement these claims with any facts which could plausibly form the basis of his purported causes of action. Accordingly, plaintiff's amended complaint should be dismissed with prejudice as against defendants

Wells,[3] Coringi, Jones, Doe ##2-5, Maria, Doe # 7, Kroengel, Trimboil, Doe # 73, Fink, and Cole. *See Gonzalez v. City of Kingston Police Dep't*, No. 9:22-CV-1214 (GTS/ML), 2023 WL 2895216, at *2 (N.D.N.Y. Apr. 11, 2023) (dismissing plaintiff's amended complaint with prejudice where plaintiff was already provided one opportunity to amend his complaint, and the amended complaint, like the original pleading, "contain[ed] largely incoherent, rambling and disjointed statements in contravention of Fed. R. Civ. P. 8(a) (2)[.]").

## VII.  **St. Lawrence County Correctional Facility**

### A.      **Defendant C.O. Salsiburu**

Plaintiff alleges that he was confined to St. Lawrence County Correctional Facility ("C.F.") in or around April 2020.  Plaintiff further alleges that on or around April 19, 2020, between 4 a.m. and 4:30 a.m., defendant Corrections Officer Salsiburu "deprived [plaintiff] from [his] prescribed medicine[.]"  (AC at 57).  Plaintiff alleges that, as the night shift officer, defendant Salsiburu "was in possession of [plaintiff's] medicine to give it to [him] before [he] started [his] Muslim fasting," and that defendant Salsiburu had "clear instructions to do that[.]"  (AC at 57).  Plaintiff then alleges that defendant Salsiburu "attentionally [sic] called [plaintiff] after [he] started [fa]sting," so he would be unable to take the medicine.  (AC at 57).

---

[3] Plaintiff is inconsistent with the spelling of many defendants' names, making it further difficult to decipher what allegations he is asserting against whom.  For example, plaintiff identifies a "Kevin M. Mwlls" (AC at 4) as a defendant when listing the parties to this action, but later refers to a defendant "Kevin Wells" (AC at 49), who is presumably the same individual.  Plaintiff has confused other defendants' names as well, such as Trimboil/Trimboli and Kraengle/Kroengel.

In the May 2022 ORR, my best interpretation of plaintiff's handwritten complaint suggested that plaintiff was alleging that defendant Salsiburu "accidently" gave plaintiff his medication after plaintiff began his fast.  (May ORR at 31).  Although still less than clear, a liberal construal of plaintiff's amended complaint suggests that he is alleging defendant Salsiburu "intentionally" gave plaintiff the medication after he began to fast.

"To be entitled to protection under the free exercise clause of the First Amendment, a prisoner must make a threshold showing that the disputed conduct substantially burdened his sincerely held religious beliefs." *Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (alteration and quotation marks omitted); *see also Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006) ("The prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." (citation omitted)).  "Determining whether a plaintiff's free exercise rights have been substantially burdened 'requires courts to distinguish important from unimportant religious beliefs, a task for which . . . courts are particularly ill-suited." *Brandon v. Kinter*, 938 F.3d 21, 32 (2d Cir. 2019) (quoting Ford, 352 F.3d at 593). As a result, the Second Circuit has been "appropriately wary of making 'conclusory judgments about the unimportance of the religious practice to the adherent.' " *Id*. (quoting *Ford*, 352 F.3d at 593). "While the substantial burden requirement presupposes that there will be cases in which it comfortably could be said that a belief or practice is so peripheral to the plaintiff's religion that any burden can be aptly characterized as constitutionally de minimis, . . . establishing a substantial burden is not a particularly onerous task[.]" *Id.* (internal quotation marks and citations omitted).

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court recommends that plaintiff's First Amendment claim against defendant Salsiburu survive sua sponte review and require a response. In so recommending, the court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### B.     Remaining St. Lawrence County C.F. Defendants and Claims

Plaintiff has failed to sufficiently amend the remaining claims he attempts to assert against those defendants listed as employees/agents of St. Lawrence County C.F. Plaintiff's original complaint asserted that 56 John Doe defendants failed to feed plaintiff for 19 days. (Compl. at 36). In the May 2022 ORR, I found that while such an allegation could rise to the level of a constitutional violation, plaintiff's allegations failed to do so due to their vague and conclusory nature. (May 2022 ORR at 33). In his amended complaint, plaintiff has replaced the "Doe" defendants with the names of 24 St. Lawrence County C.F. staff, and maintains that these 24 defendants attempted to "murder" plaintiff when they "deprived [him] foods" between April 23, 2020 and May 11, 2020. (AC at 57-58). Notwithstanding plaintiff's identification of the Doe defendants, his general statement that these 24 defendants deprived him of some unspecified amount of food over the course of two and a half weeks, without more, still falls short of stating a claim.

Plaintiff's amended complaint then alleges that, after requesting a religious diet from defendant C.O. Lesault in April 2020, C.O. Lesault told plaintiff that "USA official religion is Christian," and asked plaintiff "what is in the two complain[ts] you

14

filed against Clarkson university[?]" (AC at 58).  Plaintiff then asserts that on or about

June 29, 2020, defendant C.O. Lesault called him and "made 'white power' hand sign

to me[.]"  (AC at 58-59).  Plaintiff raised a similar claim in his original complaint,

although he has now identified defendant John Doe #66 as C.O. Lesault.  (*Compare*

Compl. at 37 *with* AC at 58-59).  Notwithstanding plaintiff's amendments to this claim,

plaintiff has failed to allege conduct by C.O. Lesault that would rise to the level of a

constitutional violation.  Plaintiff does not allege that C.O. Lesault deprived him of his

religious diet, and as discussed in the May 2022 ORR, the defendant's purported

unprofessional and offensive conduct as alleged does not rise to the level of a

constitutional violation. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (use

of vulgar or offensive language is not a constitutional violation, where no injury

resulted from the conduct).

Plaintiff next alleges that on or about May 27, 2020, non-party C.O. Gerald Cross

gave plaintiff "food with [plaintiff's] name handwritten on the bag[.]"  (AC at 59).

Plaintiff alleges that soon after, he began to experience abdominal pain.  (*Id.*).  C.O.

Cross stated that there was "no medical to see [plaintiff] till 7:00 AM," but he "did give

[plaintiff] unidentified liquid[.]"  (*Id.*).  Plaintiff states that he was then moved to a

different cell, where non-party C.O. Whitmarch gave him more "unidentified liquid."

(*Id.*).  Plaintiff claims that he began to experience bloody diarrhea, and a nurse checked

on him around 7:00 a.m.  (*Id.*).  Plaintiff alleges that he "informed the housing officer

[defendant C.O.] Shown several times," and a nurse came back to check on plaintiff at

1:30 p.m. (*Id.*). Ultimately, plaintiff alleges that he was taken to the hospital where blood work showed "poison trace" in his blood. (*Id.*).

Plaintiff raised similar allegations in his original complaint. (*Compare* Compl. at 37 *with* AC at 59). Although attempting to poison plaintiff could rise to the level of a constitutional violation, plaintiff's allegations still fail to state a claim. At the outset, defendant has not named C.O. Cross or C.O. Whitmarch as defendants, and does not otherwise specifically allege who purportedly attempted to poison him. Nor does plaintiff indicate that he actually ate the food provided by C.O. Cross, and it is entirely unclear if plaintiff is claiming that there was poison in the food he was provided, the unknown liquid, or otherwise. Although plaintiff cites to some "abnormal" test results, they do not, without more, support his allegations that "poison trace" was found in his blood. (*See* AC at 59).

Plaintiff has named St. Lawrence County C.F. doctor Doe # 69 and nurses Doe ##70-72 as defendants in the amended complaint. (AC at 14-15). They are not, however, mentioned anywhere in the body of plaintiff's complaint. Accordingly, plaintiff has failed to allege that these unidentified defendants were personally involved in conduct rising to the level of violating his constitutional rights.

For all of the reasons set forth above, the court recommends that the amended complaint be dismissed with prejudice as against St. Lawrence County C.F. defendants Lesault, Merrill, Lpage, Salisbury,[4] Lawrence, Barr-LaRock, McCollum, Rutkauskas,

---

[4] For the sake of clarity, the court notes that plaintiff has named two defendants with similar names who were both purportedly employed as corrections officers at St. Lawrence County C.F. – defendant

Perry, Sanchez, Gonzalez, Merrill, Marin, Pharoah, Martin, Warren, Simpson, Sweeney, Kellison, Fitzgerald, Simmons, Hartle, Cole, Lesault, Doe # 69, Doe # 70, Doe # 71, Doe # 72, and Shown.

## VIII. DOCCS Defendants

### A.    Excessive Force

Plaintiff alleges that while incarcerated at Watertown C.F. on or about October 30, 2020, another "murder" was attempted on him when two officers took him inside a sergeant's office, where two more officers and one or two more sergeants were waiting for him.  While one of the sergeants was talking to plaintiff, "officers hit [him] on the back of [his] head extremely hard[.]"  (AC at 60). Plaintiff alleges that he "did fall from the chair," and they told him to get back up and sit down, while keeping his hands inside his pockets.  (*Id.*).  Plaintiff states that while one of the sergeants was "threatening" him, plaintiff  "was getting hit on the back of [his] head continuously and ordering [plaintiff] don't look back[.]"  (*Id.*).

Although courts sometimes allow plaintiffs to plead causes of action against a "John Doe" defendant where a plaintiff does not know the defendant's identity, they ultimately require plaintiffs, under Rule 8(a), to allege specific facts that would aid in identifying the defendant and thereby allow defendants to prepare a defense. *See, e.g., Regeda v. City of New York*, No. 09-CV-5427, 2012 WL 7157703, at *8 (E.D.N.Y. Sept. 7, 2012) (noting that a plaintiff, in an amended complaint, must either "identify

---

**Salsiburu**, who allegedly deprived plaintiff of his medication in comport with his Muslim fasting diet, and defendant **Salisbury**, who allegedly deprived plaintiff of food to some extent.

each [defendant] by name, or else identify them as the 'John Doe defendants' and provide sufficient factual basis to allow the defendants to successfully identify the John Doe defendants and prepare for a defense"), *adopted by* 2013 WL 619567 (S.D.N.Y. Feb. 19, 2013); *Barreto v. Cnty. of Suffolk*, 762 F.Supp.2d 482, 487-88 (E.D.N.Y. 2010) (holding that a complaint against John Doe defendants satisfied Rule 8(a), as liberally applied to pro se complaints, where the plaintiff "identified the specific [jobs] that the John Doe defendants were assigned to, as well as their presence (or lack thereof) at a specified time and place" related to the cause of action, and "provided the grounds for liability with regards to each of the [d]efendants," such that those defendants had "ample notice as to the nature of the claims brought against them [and] also the opportunity to prepare an intelligent defense"); *Gabriel Capital, L.P. v. Natwest Fin., Inc.,* 137 F. Supp. 2d 251, 269 (S.D.N.Y. 2000) (holding that a complaint "fail[ed] to plead a claim against [John Doe] defendants" under Rule 8(a) where it contained no information specific to the identities or actions of those defendants).

Liberally construed, plaintiff's amended complaint appears to allege that he was subject to excessive force[5] during the above encounter with various corrections officers

---

[5] "The right not to be subject to excessive force, perhaps most commonly associated with the Fourth and Eighth Amendments, can also arise under the Fourteenth." *Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018). In *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466 (2015), the Supreme Court held that the Fourteenth Amendment's Due Process Clause grants broader protections to pre-trial detainees than the Eighth Amendment's ban on "cruel and unusual punishments" affords to a convicted prisoner. This is because, unlike a convicted prisoner, a pre-trial detainee cannot be "punished" at all. *Edrei*, 892 F.3d at 535. In this case, it is unclear whether plaintiff was a pre-trial detainee or a convicted prisoner at the time of the alleged excessive force incident described above. Assuming the less stringent Fourteenth Amendment standards for purposes of this analysis, then, it is enough to note that in order to state an excessive force claim, a detainee " " 'must show only that the

18

and sergeants. However, although plaintiff has named a date and location of the alleged incident, he has otherwise failed to sufficiently identify which, or how many, of the generally named "officers" or "sergeants" were involved.  Specifically, it is entirely unclear how many, or which, officers hit plaintiff on the back of his head, and how many/which individuals might be liable for failure to intervene in the purportedly unconstitutional use of force.

Plaintiff did not assert this claim in his original complaint.  Recently, the Second Circuit warned that a pro se plaintiff should be granted the opportunity to amend claims which are asserted for the first time in an amended complaint before entering a sua sponte dismissal with prejudice.  *Mitchell v. Annucci*, No. 21-2978-pr (2d Cir. Nov. 21, 2023) (remanding with instruction to, at minimum, allow plaintiff an opportunity to amend the claims raised for the first time in his amended complaint).  Accordingly, plaintiff's excessive force claim arising out of the events taking place at Watertown C.F. on October 30, 2020, should be dismissed without prejudice.

---

force purposely or knowingly used against him was objectively unreasonable.' " *Fletcher v. City of New London*, No. 3:16-CV-241 (MPS), 2018 WL 4604306, at *10 (D. Conn. Sept. 25, 2018) (quoting *Kingsley*, 135 S. Ct. at 2473). " '[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.' " *Kingsley*, 135 S. Ct. at 2473 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  Moreover, the failure of corrections officers to employ reasonable measures to protect an inmate or pre-trial detainee from violence by others may rise to the level of a constitutional violation. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985); *Taylor v. City of New York*, No. 16 Civ. 7857, 2018 WL 1737626, at *11 (S.D.N.Y. Mar. 27, 2018) (recognizing failure to protect claims as applicable to pre-trial detainees under the Fourteenth Amendment).  At this juncture, further distinguishing between these two categories of claims is unnecessary, because this court is recommending dismissal on a separate basis.

### B.    Medical Indifference

Plaintiff alleges having experienced a myriad of medical conditions and treatment during his time in DOCCS custody.  The court has attempted to interpret plaintiff's allegations in some semblance of chronological order, despite his chaotic pleading of the facts.

### 1.    Factual Allegations

#### i.    Condyloma/HPV

Plaintiff alleges that in August 2020, he informed "medical staff"[6] defendant Doe # 81 that there was blood in his stool, and that plaintiff had a sister with colon cancer. (AC at 62).  Plaintiff alleges that he was "misdiagnosed with [a] hemorrhoid." (AC at 62).  Confusingly, however plaintiff then states that in May 2020, Cape Vincent C.F. "prison medical" Doe # 82 "told [him] that they referred [him] to Gastroenterology," and in June 2020 he underwent a "red blood cell count." (AC at 62).  Plaintiff was approved for a colonoscopy in July 2020[7] to check for colon cancer and internal bleeding.  (AC at 62).  Plaintiff alleges that on July 19, 2020, defendant Mr. McCaughan, "director of guidance and counseling" at DOCCS central office, came into the classroom at Cape Vincent C.F. where plaintiff was working.  (AC at 62-63). Plaintiff alleges that "just after [defendant McCaughan] left, he was taken to a special housing unit and received a misbehavior ticket.  (AC at 63).

---

[6] Plaintiff alleges that Doe # 81 was employed at Watertown C.F. during the underlying events.  (AC at 19).

[7] Plaintiff has written 20**22**, but based on the context of his pleading it appears that he intended to state the date as 20**20.**

20

It appears that plaintiff was thereafter subject to some disciplinary proceedings, and placed on suicide watch.  (AC at 62-63).  On August 9, 2020, by which time it appears he had been transferred to Altona C.F., plaintiff was informed by "medical staff" defendant Doe # 83 that the colonoscopy was still scheduled, and they would call him for preparation.  (AC at 63).  On October 4, 2020, plaintiff was informed by defendant Joe #84, another medical staff personnel at Altona C.F., that the "current scope is still scheduled."  (AC at 63).  Plaintiff alleges that he was prescribed medication on October 5, 2020, by defendant doctor Doe # 85.  (AC at 63).  He states that he was "seen with and informed colonoscopy has been cancelled for a while[.]"  (AC at 63).  On November 2, 2020, he was taken to Coxsackie C.F. to "see Gastroenterology Jo[h]n Doe # 86[.]"  (AC at 63).

Plaintiff alleges that, on December 7, 2020, defendant DOCCS "offender rehabilitation coordinator ('ORC')" J. Bamker "told [plaintiff he] can "get a medical procedure when [he is] released and 'we know about the case against Clarkson St. Lawrence [sic], we would not let you get out to have access to the court, everything is connected.' "  (AC at 63).  On December 8, 2020, defendant "medical staff member" Caryn Evans stated:  "we can't put you in quarantine, keep you in the infirmary[.]"  (AC at 63).

Plaintiff alleges that in December 2022, he "requested from [defendant DOCCS acting commissioner Mr. Anthony J. A[nn]ucci to be considered for medical parole[.]"  (AC at 64).  He states that he has "not got any answer."  (AC at 64).

Plaintiff further alleges that he was eventually taken to Albany Medical Center on or about March 23, 2023, seven days before his release from DOCCS custody, where they performed a colonoscopy.  (AC at 64).  Plaintiff was seen by a colorectal surgeon on July 21, 2023, after his release from custody, and "surgery was performed" on August 24, 2023, where they found "condyloma which is caused by the Human Papilloma Virus (HPV) lifetime risk for recurrent warts, and increased risk of anal cancer [sic]."  (AC at 64).

### ii.    Concussion/Brain Injury

Plaintiff alleges that he "reported headaches and eye problems" to the medical staff at Cape Vincent C.F. (AC at 61).  In February 2021, defendant nurse Doe #78 "just performed eye exam [sic] and told [plaintiff his] eyes are normal[.]"  (*Id.*).  Plaintiff alleges that he was eventually referred to an eye doctor by defendant nurse Doe #79 in October 2021, and reading glasses were prescribed by defendant Doe #80 in January 2022.  (*Id.*).

Plaintiff then alleges that he was diagnosed with a brain concussion by defendant doctor Qudsi Vigar over two years after his initial complaint of headaches, while confined to Altona C.F. in January of 2023. (AC at 61).  Plaintiff refers to a brain MRI conducted in June 2023,[8] which showed "brain damaged partial empty sella," and states that he was told he could not get into outpatient neurosurgery, and should seek emergency room treatment.  (*Id.*).  Plaintiff states that he was discharged from the

---

[8] This appears to have been performed at the direction of plaintiff's private medical provider, after plaintiff was released from custody.  *See* AC at 64; *see also* https://nysdoccslookup.doccs.ny.gov/ (last visited November 20, 2023) (indicating that plaintiff was released to parole on March 30, 2023).

emergency room "after [m]ore than 14 hours lumbar puncture was performed [sic],"
and he was notified that there was "brain bleeding after the concussion and partial
empty sella due to internal scar[r]ed brain tissue[.]" (*Id.*).  Plaintiff states, however, that
there were "negative" impressions upon examination of his brain, which showed "no
acute intracranial abnormality."  (AC at 61-62).

### 2.    Legal Standards

A convicted prisoner asserting a claim for deliberate indifference to his serious
medical needs must plead facts satisfying the two elements of such a claim: (1) an
"objective" element, which requires a showing that the medical issue is sufficiently
serious, and (2) a "subjective" or "mental" element, which requires a showing that the
defendant acted with at least deliberate indifference to the risk of serious harm.  *Darnell
v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

The objective element requires allegations that the plaintiff's medical need is a
"sufficiently serious" condition that "could result in further significant injury or the
unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d
Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also
Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (noting that standard contemplates
"a condition of urgency, one that may produce death, degeneration, or extreme pain").
To satisfy the subjective or "mental" element, a convicted prisoner must allege that a
correction official actually "kn[ew] of and disregard[ed] an excessive risk to inmate
health or safety." *Darnell*, 849 F.3d at 32 (quoting *Farmer*, 511 U.S. at 837). That is, a
convicted prisoner must allege that the official was both "aware of facts from which the

23

inference could be drawn that a substantial risk of serious harm exists, and he must also [have] draw[n] the inference." *Id.*

### 3. Analysis

With respect to plaintiff's condyloma/HPV condition, he has failed to plausibly allege a deliberate indifference claim, or any other constitutional violation, with respect to named defendant McCaughan, and the amended complaint should be dismissed as against him.  Furthermore, plaintiff has failed to plausibly allege how the conduct described by defendants Doe #81 or Doe #82 rises to the level of deliberate indifference.  To the extent Doe #81 "misdiagnosed" plaintiff with a hemorrhoid, such a claim by itself is not cognizable under section 1983. *See Sanders v. Laplante*, No. 3:19-CV-1151, 2019 WL 5538118, at *3 (D. Conn. Oct. 25, 2019) ("[E]ven after *Darnell*, it is well-settled that 'negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim.' ") (*quoting Clay v. Kellmurray*, 465 F. App'x 46, 47 (2d Cir. 2012)).  Moreover, plaintiff has failed to plausibly allege how Doe #82's referral to Gastroenterology constituted deliberate indifference, considering plaintiff's representation that he was actually seen for the consult as a result of the referral.  (AC at 62).  Accordingly, the amended complaint should be dismissed without prejudice as against defendants Doe #81 and Doe #82.

However, mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185,191 (2d Cir. 2008), the court recommends that plaintiff's deliberate medical indifference claims asserted against defendants Doe # 83, Doe # 84, Doe #85, Doe # 86,

J. Bamker, and Caryn Evans survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

Conversely, the court finds that plaintiff's allegations stemming from his concussion/brain injury are so vague, confusing and remote, that they fail to plausibly state a claim. According to plaintiff's allegations, he reported headaches and "eye problems" to defendants Doe ##78-80 over three months after he was purportedly hit on the back of the head by other corrections officers in October 2020. Plaintiff, however, does not allege how the treatment provided by these defendants - eye examinations, a referral to an eye doctor, and a prescription for reading glasses - rose to the level of violating plaintiff's constitutional rights. Moreover, plaintiff has failed to plausibly allege how this treatment was related to plaintiff's "brain concussion" diagnosed over two years after his initial complaint. Nor does plaintiff's allegation that defendant doctor Qudsi Vigar "diagnosed" him with a "brain concussion" in January 2023 sufficiently allege a constitutional claim against Dr. Vigar. Accordingly, the complaint should be dismissed without prejudice as against defendants Doe ##78-80 and Dr. Vigar.

Moreover, plaintiff's allegations against defendant Annucci fail to state a claim. It is well settled that "[t]he receipt of letters or grievances, by itself, does not amount to personal involvement." *Leneau v. Ponte*, No. 1:16-CV-776, 2018 WL 566456, at *14–15 (S.D.N.Y. Jan. 25, 2018) (citation and quotation marks omitted); *see also Evans v. Barone,* 3:22-CV-074, 2022 WL 408920, at *6 (D. Conn. Feb. 10, 2022) (finding no

25

personal involvement when the plaintiff "alleges only that [defendant] failed to take any action based on a letter or letters he wrote to them; he does not even allege that they received the letters"); *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability." (citation omitted)).  Accordingly, plaintiff's allegation, without more, that he sent defendant Annucci a letter requesting medical parole is insufficient to establish personal involvement in a constitutional violation, and the amended complaint should be dismissed as against defendant Annucci without prejudice.

### C.    Defendant Rick Gonzalez

Plaintiff alleges that on September 16, 2021, defendant DOCCS Office of Special Investigation Agent Rick Gonzalez visited plaintiff at Cape Vincent C.F. to train plaintiff on

> detecting and reporting illegal drug activities; communication between me and them included letters phone calls and in person meetings, information included GE, Clarkson some of the defendants and COVID-19 research, I will told that, we want to make sure you are safe, research was COVID-19 gain of function technology to develop US biological weapon jointly with GE and United States government intelligence, Farideh was set up to criminalize you, they went too far to hurt you physically.

(AC at 41).  This is the only reference to defendant Gonzalez in the amended complaint. Because plaintiff's incomprehensible allegations as they pertain to defendant Gonzalez,

even liberally construed, fail to plausibly allege conduct violating plaintiff's

constitutional rights, the amended complaint should be dismissed without prejudice as

against this defendant.

## IX.    *Monell* **Liability**

In his original complaint, plaintiff named the police departments of several

municipalities as defendants, along with the municipalities themselves.  Plaintiff has

named these same entities as defendants in his amended complaint.  (*Compare* Compl.

*with* AC).  As discussed in the May 2022 ORR, plaintiff's claims against the police

departments are subject to dismissal because they are merely "administrative arms of a

municipality" and "do not have a legal identity separate and apart from the

municipality[,]" thus they are not amendable to suit.  (May 2022 ORR at 34-35).

With respect to the municipalities themselves, the district court adopted this

court's recommendation to dismiss plaintiff's original complaint as against these

entities for failure to allege that the constitutional violations, to the extent any were

cognizable, were caused by a policy or custom of the municipality.  (May 2022 ORR at

35).  Plaintiff's amended complaint likewise fails to allege that any of the purported

constitutional violations which he describes were caused by a policy or custom of the

municipality.  Accordingly, the amended complaint should be dismissed with prejudice

as against defendants St. Lawrence County, Greene County, Village of Potsdam,

Village of Potsdam Police Department, Town of Canton, Town of Canton Police

Department, St. Lawrence County Sheriff's Department, and Greene County Sheriff's

Department.

27

## X.    Defense/Family Attorneys

Plaintiff alleges that he was the subject of a "malicious[ ]" family offense petition in February 2019, which apparently stemmed "from the same set of allegations" concerning the criminal charges that were pending against him.  (AC at 67).  Liberally construed, plaintiff appears to allege that his two family court attorneys, defendants James Maswick and Bryan Kennelly, as well as his two criminal defense attorneys, defendants Dan Ramsey and Peter Dumas, afforded him deficient representation and "conspired" with the assistant district attorney concerning the petition/charges pending against him.  (AC at 67).

It is unclear from plaintiff's allegations whether his attorneys were privately retained or appointed by the court.  Notwithstanding the distinction, plaintiff's claims against these attorneys are subject to dismissal.  "It is well-settled that private attorneys and law firms . . . do not act under color of state law and are not state actors for purposes of Section 1983 simply by virtue of their state-issued licenses to practice law." *Manko v. Steinhardt*, No. 11-CV-5430, 2012 WL 213715, at *4 (E.D.N.Y. Jan. 24, 2012) (collecting cases); *see also Cunningham v. Fisch*, No. 01 Civ. 1123, 2001 WL 1313518, at *4 (S.D.N.Y. Oct. 26, 2001) ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981))).  Likewise, "a public defender is not a state actor as required for a claim under section 1983." *Welch v. Schenectady Cnty.*, No. 1:22-CV-9 (DNH/DJS), 2022 WL 3904113, at

*2 (N.D.N.Y. Aug. 10, 2022), *report and recommendation adopted*, 2022 WL 3908798 (N.D.N.Y. Aug. 30, 2022) (citing *Fisk v. Letterman*, 401 F. Supp. 2d 362, 378 (S.D.N.Y. 2005)). Although a public defender and a private attorney could be held liable under section 1983 if they conspired with state actors, plaintiff here has failed to plead any plausible facts that suggests any of these named attorneys were involved in a conspiracy to inflict an unconstitutional injury. Otherwise, it is clear that a section 1983 action "is not the appropriate vehicle to raise a claim of ineffective assistance of counsel." *Murphy v. Feliciano*, No. 3:17-CV-269, 2017 WL 3699353, at *7 (D. Conn. May 31, 2017); *see also Magassouba v. Cascione, Purcigliotti & Galluzzi, P.C.*, 2021 WL 4692990, at *4 (S.D.N.Y. June 14, 2021), *report and recommendation adopted as modified*, 2021 WL 4198219 (S.D.N.Y. Sept. 15, 2021). Accordingly, the amended complaint should be dismissed without prejudice, but without leave to amend, against defendants Dumas, Ramsey, Maswick and Kennelly.

## XI.  **Defendant "Val"**

In his original complaint, plaintiff briefly states that someone named "Val" helped the district attorney with some unknown administrative help. In my May 2022 ORR, I recommended dismissal of the complaint without prejudice as to this defendant, to provide plaintiff an opportunity to sufficiently allege what constitutional claim this defendant was purportedly responsible for. (May 2022 ORR at 35-38). The amended complaint does not, however, identify any conduct by named defendant Val that would rise to the level of a constitutional violation. Therefore, the amended complaint should be dismissed with prejudice as against defendant Val.

29

**WHEREFORE**, it is

**RECOMMENDED**, that the amended complaint (Dkt. No. 17) be accepted for filing in part; and it is further

**RECOMMENDED,** that plaintiff's First Amendment free exercise claim against defendant Salsiburu as set forth in the amended complaint (Dkt. No. 17) survives initial review and requires a response; and it is further

**RECOMMENDED,** that plaintiff's Eighth Amendment medical indifference claims against defendants Doe #83, Doe #84, Doe #85, Doe #86, J. Bamker, and Caryn Evans as set forth in the amended complaint (Dkt. No. 17) survive initial review and require a response;[9] and it is further

**RECOMMENDED,** that plaintiff's § 1983 claims against defendants GE and Clarkson as set forth in the amended complaint (Dkt. No. 17) be **DISMISSED** without prejudice, but without leave to amend; and it is further

**RECOMMENDED,** that plaintiff's Title VII claim against defendant GE as set forth in the amended complaint (Dkt. No. 17) be **DISMISSED** without prejudice; and it is further

---

[9] If the district court adopts this recommendation, plaintiff must engage in discovery and take reasonable steps to ascertain the identity of the "John/Jane Doe" defendants remaining in this action. Upon learning the identities of the unnamed defendants, plaintiff must amend the operative complaint to properly name those individuals as parties. If plaintiff fails to ascertain the identity of the Doe defendants so as to permit timely service of process, all claims against those individuals will be dismissed.

30

**RECOMMENDED,** that plaintiff's remaining claims against defendants GE and Clarkson as set forth in the amended complaint (Dkt. No. 17) be **DISMISSED** with prejudice; and it is further

**RECOMMENDED,** that plaintiff's excessive force claim arising from the events taking place at Watertown C.F. on or about October 30, 2020, as set forth in the amended complaint (Dkt. No. 17) be **DISMISSED** without prejudice; and it is further

**RECOMMENDED,** that plaintiff's Eighth Amendment medical indifference claims against defendants McCoughan, Doe #81, Doe #82, Doe #78, Doe #79, Doe #80, Vigar, and Annucci as set forth in the amended complaint (Dkt. No. 17) be **DISMISSED** without prejudice; and it is further

**RECOMMENDED,** that the amended complaint (Dkt. No. 17) as against defendant Gonzalez be **DISMISSED** without prejudice; and it is further

**RECOMMENDED,** that the amended complaint (Dkt. No. 17) as against defendants Dumas, Ramsey, Maswick and Kennelly be **DISMISSED** without prejudice, but without leave to amend, and it is further

**RECOMMENDED,** that the remaining defendants and causes of action set forth in the amended complaint (Dkt. No. 17) be **DISMISSED** with prejudice; and it is further

**RECOMMENDED,** that if the district court adopts this recommendation, any amended complaint be returned to me for any orders relating to service.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.

Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:  December 1, 2023

Andrew T. Baxter
U.S. Magistrate Judge