UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AHMED KHALIL,

                         Plaintiff,

v.                                                             5:22-cv-0312
                                                                  (GTS/MJK)

KRISTA TOUSIGNANT, Registered Nurse/DOCCS/
Altona Prison – Individual and Official Capacities,
formerly known as Jane/John Doe #83; DEIDRE
SOUCIA, Registered Nurse/DOCCS/Altona Prison –
Individual and Official Capacities, formerly known as
Jane/John Doe #84; AMBER LASHWAY, Nurse
Practitioner/DOCCS/Altona Prison – Individual and
Official Capacities, formerly known as Jane/John Doe
#85; SETH RICTHER, MD/DOCCS/Coxsackie Prison –
Individual and Official Capacities, formerly known as
Jane/John Doe #86; J. BAMKER,[1] Offender Rehabilitation
Coordinator, DOCCS/Altona Prison; CARYN EVANS,
Nurse, DOCCS/Altona Prison; and SALSIBURU,[2]
Corrections Officer, St. Lawrence County Jail,

                         Defendants.
_____

APPEARANCES:                                                     OF COUNSEL:

---

[1]      Defendants indicate in one of the pending motions to dismiss that the proper spelling is "Banker." (Dkt. No. 38, Attach. 1, at 8.) The Court respectfully orders the Clerk of Court to update the docket to reflect this correction.

[2]      Plaintiff submitted a status report on September 18, 2025, to inform the Court that the proper spelling of that Defendant's name is "Salisbury." (Dkt. No. 99.) The Court notes that Scott Salisbury was listed as a defendant in Plaintiff's Amended Complaint (and was, like "Salsiburu," alleged to be a corrections officer at the St. Lawrence County jail), and therefore it appears that the "Salsiburu" defendant is an unnecessary duplicate defendant. (Dkt. No. 17, at 9-10.) With this clarification, it also appears that Scott Salisbury was erroneously terminated from this action. As a result, the Court respectfully orders the Clerk of Court to terminate the "Salsiburu" defendant and remove the status of "TERMINATED: 08/28/2024" currently under the name of Defendant Scott Salisbury in the caption of the docket sheet, given that Plaintiff's First Amendment free exercise claim against this Defendant survived the Court's Decision and Order of August 28, 2024. (Dkt. No. 23, at 7.)

AHMED KHALIL
   *Pro Se* Plaintiff
272 Central Avenue, Apt. 6
Albany, NY 12206

HON. LETITIA JAMES
NEW YORK STATE ATTORNEY GENERAL
  Counsel for Defendants[3]
300 South State Street, Suite 300
Syracuse, NY 13202

AIMEE COWAN, ESQ.
Assistant Attorney General

GLENN T. SUDDABY, United States District Judge

### DECISION and ORDER

Currently before the Court, in this civil rights action filed *pro se* by Ahmed Khalil ("Plaintiff") against Krista Tousignant, Deidre Soucia, Amber Lashway, Seth Richter, Julie Banker, and Caryn Evans (collectively "Defendants") as well as Scott Salisbury, are the following three motions: (1) Defendant Evans' and Defendant Banker's motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6); (2) Defendant Lashway's and Defendant Tousignant's motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6); and (3) Defendant Richter's and Defendant Soucia's motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. Nos. 38, 69, 86.)  For the reasons set forth below, Defendants' motions are all granted.

I.     RELEVANT BACKGROUND

    A.     **Plaintiff's Second Amended Complaint**

---

[3]     The Office of the New York Attorney General has appeared as the representative of all of the remaining Defendants except Corrections Officer Salisbury, who has not, as far as the Court can tell as of the date of this Decision and Order, been properly served.

Generally, in his Second Amended Complaint,[4] Plaintiff asserts multiple causes of action against a host of defendants (many of which have been dismissed by a previous order of this Court), but the only two that remain are (1) a claim for a violation of Plaintiff's right to free exercise of his religion pursuant to the First Amendment against Defendant Salisbury, and (2) a claim for medical indifference pursuant to the Eighth Amendment against the other remaining Defendants.[5]  (Dkt. No. 23, at 7-9.)

B.      **Defendants' Memoranda of Law and Plaintiff's Failure to Respond**

Generally, in their motions to dismiss, Defendants all make an essentially identical argument.  (Dkt. No. 38, Attach. 1; Dkt. No. 69, Attach. 1; Dkt. No. 86, Attach.1.)  Specifically, Defendants argue that Plaintiff has not stated a claim of medical indifference under the Eighth Amendment against any of them because he has not alleged facts to plausibly suggest either that there was a sufficiently serious deprivation of any relevant medical care or that any of them knew and disregarded an excessive risk to Plaintiff's health and safety.  (*Id.*)

---

[4]     While Defendants' motions to dismiss were pending, Plaintiff filed a motion to amend or correct the Second Amended Complaint to (a) substitute the correct name of "Salisbury" regarding one of the defendants, and (b) add additional factual allegations.  (Dkt. No. 97.)  The Court denied this motion without prejudice on September 22, 2025.  (Dkt. No. 101.)  However, as discussed already, the Court recognizes that any reference to "Salsiburu" in the Second Amended Complaint should be read as referring to Defendant Scott Salisbury.

[5]     Although the Second Amended Complaint contains new factual allegations seemingly related to claims that have already been dismissed, the Court notes that it found such amendments to be improper in a previous Text Order.  (Dkt. No. 42.)  As a result, the Second Amended Complaint does not somehow resurrect any claims against any other defendants that have been previously dismissed.  The Court notes also that the rejected proposed Third Amended Complaint did not contain any additional facts related to the Defendants who have filed the pending motions to dismiss and thus the Court has no reason to believe that Plaintiff has any additional relevant facts to support such claims.

Despite being granted multiple extensions of time to respond to Defendants' three motions, Plaintiff has not filed a response to any of those motions.

## II. GOVERNING LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of

4

what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the

5

pleading must contain at least "some factual allegation[s]." *Id*. at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[6]

---

[6]  *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a]

7

### III.   ANALYSIS

After carefully considering whether Plaintiff has stated a claim for medical indifference pursuant to the Eighth Amendment, the Court answers that question in the negative for the reasons stated in Defendants' memoranda of law. (Dkt. Nos. 38, 69, 86.) To those reasons, the Court adds the following analysis (which is intended to supplement, and not supplant, Defendants' reasons).

The Eighth Amendment protects incarcerated prisoners from the infliction of cruel and unusual punishment, including where officials are deliberately indifferent to the serious medical needs of a prisoner. "'The standard of deliberate indifference includes both subjective and objective components.'" *Mallet v. New York State Dep't of Corrs. and Cmty. Supervision*, 126 F.4th 125, 132 (2d Cir. 2025) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 [2d Cir. 1998]). To meet the objective component for the purposes of a motion to dismiss, a plaintiff must allege facts plausibly suggesting that, "while he was incarcerated, he suffered from a medical condition that is, 'in objective terms, sufficiently serious,'" which has been defined as "a 'condition of urgency that may result in degeneration or extreme pain,' . . . that 'significantly affects daily activities,' or that involves 'chronic and substantial pain.'" *Mallet*, 126 F.4th at 132 (quoting *Chance*, 143 F.3d at 702; *Brock v. Wright*, 315 F.3d 158, 162 [2d Cir. 2003]). Such condition "need not be 'life-threatening' or 'at the limit of human ability to bear,' but it must be more than simply 'uncomfortable and annoying.'" *Mallet*, 126 F.4th at 132 (quoting *Brock*, 315 F.3d at 163).

---

defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

To meet the subjective component, a plaintiff must allege facts plausibly suggesting that the defendant's acts or omissions "'evince[] a conscious disregard of a substantial risk of serious harm.'" *Mallet*, 126 F.4th at 132 (quoting *Darby v. Greenman*, 14 F.4th 124, 128 [2d Cir. 2021]). Specifically, "'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Darby*, 14 F.4th at 128 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 [1994]).

Plaintiff's allegations related to the relevant Defendants in the Second Amended Complaint do not plausibly suggest that either of these components are met here. Indeed, Plaintiff's allegations regarding the involvement of these Defendants is sparse. Plaintiff alleges that, on August 10, 2020,[7] he reported to John Doe #81 who was a member of the medical staff that he noticed bleeding after bowel movements, that his sister had a history of colon cancer, and that he was "misdiagnosed" with a hemorrhoid. (Dkt. No. 41, at ¶ 51.) On or about May 20, 2020, John Doe #82 informed Plaintiff that he had been referred to Gastroenterology, and he was approved for a colonoscopy by the DOCCS central office to check for colon cancer and internal bleeding in July 2020. (*Id.*) On or about July 12, 2022,[8] an unidentified medical staff member told Plaintiff he would have a colonoscopy within two weeks. (*Id.*) On August 9, 2020, Defendant Tousignant told him his colonoscopy was still scheduled and "they will call me for preparation." (*Id.*) Plaintiff alleges that on September 30, 2020, he was experiencing "much

---

[7]   The Court questions whether this date was provided in error, given that these reports of bleeding appear to be what prompted the referral for to a gastroenterologist.

[8]   Based on discrepancies in Plaintiff's allegations and the fact that he alleges the colonoscopy was eventually performed in early 2023, the Court is not certain whether all these relevant events occurred in 2020 or 2022.

more" bleeding than what he used to notice. (*Id.*) On October 4, 2020, Defendant Soucia told Plaintiff that his procedure was still scheduled. (*Id.*) He was prescribed a medication, "Docusate Sodom," on October 5, 2020, by Defendant Lashway and told that his colonoscopy had been "cancelled for a while"; Plaintiff then makes an unclear allegation to the effect that she informed him that "then you referral [sic] and then you referral [sic] has to be." (*Id.*) On November 2, 2020, he was taken to see Defendant Richter, a gastroenterologist. (*Id.*) On December 7, 2020, Defendant Banker told him that "[you] can get a medical procedure when [you are] released and 'we know about the case against Clarkson, GE Clarkson St. Lawrence, we would not let you out to have access to the court, everything is connected.'" (*Id.*) On December 8, 2020, Defendant Evans told him that "we can't put you in quarantine, keep you in the Infirmary." (*Id.*) Plaintiff was taken to Albany Medical Center on March 23, 2023, at which time a colonoscopy was performed. (*Id.*) Following his release from custody, Plaintiff saw a non-defendant colorectal surgeon on July 21, 2023, and underwent a surgery on August 24, 2023, that revealed "condyloma which is caused by the Human Papilloma Virus (HPV)." (*Id.*)

      These factual allegations fail to plausibly suggest that Plaintiff was suffering from a sufficiently serious medical condition at the relevant time. Of note, the only allegations Plaintiff provides related to any medical condition is to allege that he had bleeding with bowel movements that became more copious on at least on occasion in September 2020. He does not provide any allegations related to the quantity, frequency, or severity of that bleeding or whether that blood loss affected him in any way, nor does he allege that he suffered any pain or other symptoms. While bleeding can certainly be concerning, Plaintiff's allegations do not plausibly suggest that his medical condition at that time was anything more than uncomfortable or

10

annoying.  In fact, he alleges that once he was more fully assessed in 2023, it was revealed (not that he had colon cancer like his sister but) only that he had "condyloma," which are more commonly known as warts produced by HPV.  In the absence of any allegations apart from the fact he was experiencing blood with bowel movements, Plaintiff has not plausibly alleged that he suffered from a sufficiently serious medical condition.

Similarly, even assuming for the sake of argument that Plaintiff's condition could be considered sufficiently serious, the above-described factual allegations also do not plausibly suggest that any of the relevant Defendants either knew that Plaintiff had a serious condition or that they acted with deliberate indifference to any such knowledge.  Again, as far as Plaintiff has alleged, the most any of those Defendants were aware of was that Plaintiff had bleeding with bowel movements.  Defendant Tousignant and Defendant Soucia both merely told Plaintiff that he was still scheduled for a colonoscopy, which hardly suggests a denial a medical care, much less deliberate indifference to medical needs.  Defendant Lashway prescribed him a medication and informed him that his colonoscopy had been cancelled, but Plaintiff does not allege that it was Defendant Lashway herself (or any of the other relevant Defendants) that made the choice to cancel that procedure.  As to Defendant Richter, Plaintiff alleges that he was taken to "see" Defendant Richter for a gastroenterology appointment, but does not allege what Defendant Richter did or said at that appointment or suggest in what way that care was inadequate, let alone deliberately indifferent.  Defendant Evans merely told Plaintiff that he could not be kept in the infirmary or be put into quarantine; but he does not even allege whether this interaction had anything to do with his gastroenterological condition, much less any symptoms he was experiencing that would make refusal to admit him to the infirmary an act of deliberate

11

indifference to his medical needs. Lastly, although Plaintiff alleges that Defendant Banker told him he could wait to get any medical procedure until after he was released from prison, Plaintiff does not allege that Defendant Banker, who was an offender rehabilitation coordinator and not a medical provider, was aware of the details of Plaintiff's medical condition to the extent he would know whether it was sufficiently serious, and Plaintiff's suggestion that the reason for the denial was part of the alleged conspiracy against him does not suggest any requisite knowledge specifically of Plaintiff's medical condition. For all of these reasons, Plaintiff's allegations also do not plausibly suggest that he has met the requirements of the objective component of his Eighth Amendment claim against the relevant Defendants.

For the above reasons, the Court finds that Plaintiff has not alleged facts to plausibly suggest a claim for medical indifference under the Eighth Amendment against Defendant Tousignant, Defendant Soucia, Defendant Lashway, Defendant Richter, Defendant Banker, or Defendant Evans. The Court therefore grants Defendants' motions to dismiss those claims.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motions to dismiss (Dkt. Nos. 38, 69, 86) are **GRANTED**; and it is further

**ORDERED** that the Eighth Amendment claims against Defendant Tousignant, Defendant Soucia, Defendant Lashway, Defendant Richter, Defendant Banker, and Defendant Evans are **DISMISSED**.[9]

---

[9] Per the Court's Decision and Order of August 28, 2024 (which adopted the findings in the Order and Report and Recommendation of December 1, 2023, containing the Magistrate Judge's findings on initial review of the *pro se* Amended Complaint), the only surviving claim remaining in this action is against Defendant Scott Salisbury (formerly misidentified as "Salsiburu") for a violation of Plaintiff's right to free exercise of his religion pursuant to the First

Dated: November 18, 2025
      Syracuse, New York

                                                         Glenn T. Suddaby
                                                         U.S. District Judge

---

Amendment.  (Dkt. Nos. 20, 23.)  There has been no proof filed with the Court that Defendant Scott Salisbury has been served as of the date of this Decision and Order, nor has that claim yet been subject to any motion practice.